ALBANY,
January, 1822.

BANK OF CHE-
NANGO
v.
CURTISS.

---

## The Bank of Chenango *against* Curtiss and others.

The act incorporating the Bank of Chenango, (sess. 41. ch. 253. s. 16.) THIS was an action of *assumpsit,* tried at the *Chenango* circuit, in *June,* 1821, before Mr. Justice *Van Ness.* The directs, that all the parties, whether makers, endorsers, drawers, or guarantees of any note, &c. discounted at the bank, shall be sued jointly, &c. so that only one bill of costs shall be charged on one note, &c. : *Held,* that a declaration against the maker and endorser of a note, discounted at the bank, jointly, as if they were joint makers, is good, and the note may be given in evidence under such count, by force of the statute. But such note cannot be given in evidence under the money counts, when the endorser is joined, the statute having given a new remedy unknown to the common law.

The *Bank of Chenango* agreed with the defendants, on their depositing in the bank 2,000 dollars, to let them have 5,000 dollars in the notes of the bank, which were marked, and as long as the notes were kept from returning to the bank, the defendants were to pay no interest. And the defendants were, at no time, to suffer a greater amount to return than the amount of their deposit; and they were to have the money as long as they kept the exchanges good; but either party was to be at liberty to close the concern, on giving six months notice; and if the exchanges were not kept good, the agreement was to be forfeited, and the bank to be at liberty to call for immediate payment; and the defendants gave their note to the bank, made by two of them, and endorsed by the other two, for the 5,000 dollars, payable 90 days after date : *Held,* in an action brought by the bank, on the note, against all the defendants, as makers, that the contract between the parties was not *usurious;* that the note was discounted within the meaning of the act; and that, although, when the note fell due, no bills of the bank had been returned, and, therefore, nothing was due on the note, and more than six months had elapsed; yet, that the endorsers were not discharged, as they were estopped by the agreement from making any such objection.

declaration was of the term of *August*, 1819, against *John G. Curtiss, Thomas Greenly, Joseph Morse,* and *Joseph Enos,* defendants, " for that, whereas the before-named defendants, on the 17th day of *November*, 1818, at the town of *Eaton*, to wit, at *Norwich*, in the county of *Chenango*, made a certain note in writing, commonly called a promissory note, their own proper hands and names being thereunto subscribed, bearing date the same day and year last aforesaid, and, then and there. delivered the said note to the said plaintiffs, by which said note the said defendants became bound, and promised to pay the said plaintiffs, ninety days after the date of the said note, at the *Bank of Chenango,* in the village of *Norwich*, 5,000 dollars, for value received, which said note the plaintiffs, in fact, say, was discounted at the *Bank of Chenango ;* and, whereas it is enacted, among other things, by the act entitled an act to incorporate the *Bank of Chenango,* that all the parties, whether makers, obligors, drawers, endorsers, or guarantees of any note, bond, or bill, discounted at said bank, or pledged for money due to the same, are thereby declared to be joint makers or drawers, and as such, shall and may be sued, declared against, and prosecuted to judgment and execution, jointly, any matter of form or practice in Courts heretofore in use to the contrary notwithstanding, so that no more than one bill of costs shall be charged upon one note, bond, or bill, discounted at said bank ; by reason whereof, and by force of the statute aforesaid, the said defendants became liable, jointly, to pay to the said plaintiffs the said sum of money in the said note mentioned, according to the tenor and effect of the said note, and of the statute aforesaid ; and being so liable, they, the said defendants, in consideration thereof, afterwards, to wit, on the day and year aforesaid, at, &c. undertook, and, then and there, faithfully promised the said plaintiffs to pay to them the said sum of money, in the said note mentioned, according to the tenor and effect of the said note, and of the statute aforesaid." The declaration contained, also, counts for money lent, &c. and money had and received, &c., and concluded in the usual form. The defendants, *Curtiss* and *Greenly,* impleaded with

*Morse* and *Enos*, pleaded *non-assumpsit*, with notice of set-off.

The plaintiffs, at the trial, proved the handwriting of the makers and endorsers of a note, dated *Eaton*, 17th of *November*, 1818, made by *Curtiss* and *Greenly*, by which they promised, jointly and severally, ninety days after date, to pay to the order of *Joseph Morse*, at the *Bank of Chenango*, in the village of *Norwich*, 5,000 dollars, for value received, which note was endorsed by *Joseph Morse* and *Joseph Enos*. The plaintiff then offered to prove, that payment of the note had been regularly demanded, and refused by the makers, and due notice thereof given to the endorsers, and that the note had been duly protested for non-payment. This evidence was objected to by the defendants' counsel, but the Judge overruled the objection, and admitted the evidence. The defendants' counsel objected to the note being read in evidence, but the Judge allowed it to be read. to the jury. The plaintiffs then introduced, with the consent of the defendants' counsel, the original proposition in writing made by the defendants, as the basis of the loan, as follows, to wit : " Say we deposit 2,000 dollars, and take from you 5,000 dollars, the whole of which is marked. So long as we keep the whole in circulation, we pay no interest. We are, at no time, to suffer a greater amount to arrive at the bank, than the amount of our deposit. We pay interest on all such money marked, from the time it arrives, until redeemed. So long as the exchanges are kept good, so long we are to have the money ; either party reserving the privilege of closing the concern, by giving six months notice. Provided, we do not keep the exchanges good, the agreement is forfeit, and the bank at liberty to call for immediate payment." To this proposition the plaintiffs acceded, and made the loan accordingly. It was admitted that the note declared on was given for the 5,000 dollars mentioned in the agreement, and that the deposit of 2,000 dollars was made pursuant to the agreement ; and that, on the 25th of *May*, 1819, there had been returned to the bank, of the marked bills, 2,599 dollars, which remained unredeemed, and on that day, the plaintiffs sent a written notice addressed to the defendants, *Curtiss* and *Greenly*, stating

the amount of bills returned, and their reason for wishing the concern closed, and that they availed themselves of the privilege contained in the agreement for that purpose. The plaintiffs claimed a balance due on the note, on the 10th of *August*, of 3,354 dollars and 10 cents, according to a statement annexed to the case; for which sum a verdict was found for the plaintiffs, subject to the opinion of the Court, on a case containing the facts above stated.

This case was very fully and ably argued; but it is necessary to state only the principal points and authorities.

*J. C. Spencer*, for the plaintiffs, contended, that the declaration, though it might have been bad on demurrer, was good after verdict. This mode of declaring, though singular, was prescribed by the statute incorporating the bank. There is not, therefore, such a variance as would have been fatal, had it been an ordinary case.

Again; this was a loan of money to the four defendants who made the proposition, and who gave the note as security. They were liable as borrowers on the original contract or loan. The count for money lent is good, and the note might have been laid aside.

Any allegation of *usury* in this transaction cannot be maintained. The defendants were to pay interest on the excess of money returned to the bank. It is not an agreement to pay the principal, with interest at a greater rate than *seven* per cent. per annum. In *Floyer* v. *Edwards*, (*Cowp.* 112. 115.) Lord *Mansfield* said, that " wherever it is in the power of a known borrower of money, to pay the principal within a limited time, without interest; upon nonpayment, the reservation of a larger sum than the statute allows, is no usury." In the present case, it was in the power of the defendants, at any time, to prevent any thing more than the legal interest from being paid. So, taking interest in advance, or discounting bills, is not usury. (*Hammett* v. *Yea*, 1 *Bos. & Pull.* 144. *Maddock* v. *Rumball*, 8 *East*, 304. 5 *Comyn's Dig.* 483. *Usury*, B. 560. 69.)

*Storrs*, contra, contended that the note was not discount_ ed at the bank, but pledged merely for money lent. There was no evidence to support that averment in the declara-

<div style="margin-left:70%;">

ALBANY,
January, 1822.

BANK OF CHE-
NANGO
v.
CURTISS.

</div>

tion. That the note described in the declaration, and the one given in evidence did not agree, and the *variance* was fatal.

There being a *joint* action against four, two of whom are makers, and two endorsers of the note, if the plaintiffs cannot recover against all the defendants, they cannot recover against any. The 16th section of the statute incorporating the bank, (sess. 41. ch. 253.) which gives this peculiar form of action, contains a *proviso*, "that nothing in this section contained shall alter, or in any way affect, the legal liabilities of the parties, or any of them." When the note became due, no money having been returned to the bank, nothing could be demanded on the note. The plaintiffs gave time to the makers; and it is well settled, that if the creditor indulges the principal, by exceeding the time of payment, it discharges the endorsers, or surety. (*The People* v. *Jansen*, 7 *Johns. Rep.* 332. *Hubbly* v. *Brown*, 16 *Johns. Rep.* 70. 72. 2 *Johns. Ch. Rep.* 559, 560.)

The note could not be given in evidence under the money counts. The statute has given the plaintiffs a new action, entirely unknown to the common law. It is not merely a new remedy, but a peculiar form of action, which must be pursued by the plaintiffs; and they can recover in no other shape or form of proceeding. It is on the statute that the plaintiffs must recover, if at all; and they were bound, therefore, to have recited the statute in the writ or declaration. (6 *Bac. Abr. Statute*, 1.) This is not a case in which the plaintiffs can recover, partly at common law, and partly on the statute. They must recover wholly under the statute, or wholly at common law. The plaintiffs are bound to aver every fact in their declaration, which is necessary to show the Court, that they have a good cause of action. (5 *Comyn's Dig. Plead.* c. 76. *Plowd.* 376.)

Again; the contract in this case was *usurious*. In *Roberts* v. *Trenayne*, (*Cro. James*, 507, 508.) *Doderidge, J.* took the distinction, that if the casualty goes to the *interest* only, and not to the principal, it is usury; but if the principal and interest are both at hazard, then it is not usury. But if both principal and interest are secured, it is usury. (*Richards* v. *Brown, Cowp.* 770. 774. *Morse* v. *Wilson,*

4 *Term. Rep.* 353. *Butten* v. *Dounham, Cro. Eliz.* 643.) No shift or contrivance to cover a loan will be allowed to prevail. It is not necessary that the contingency should ever happen, in order to render the transaction usurious. If once infected with usury, no agreement of the parties can render it valid. No usage of trade or business will be allowed to control the statute. (*Dunham* v. *Gould,* 16 *Johns. Rep.* 367. 372.)

WOODWORTH, J. delivered the opinion of the Court. The act incorporating the *Bank of Chenango,* enacts, " that all the parties, whether makers, obligors, drawers, endorsers, or guarantees, of any note, bond, or bill, discounted at said bank, or pledged for money due to the same, are declared to be joint makers, obligors, or drawers, and as such shall and may be sued, declared against, and prosecuted to judgment and execution, jointly; provided, that nothing in the act contained shall alter, or in any way affect the legal liabilities of the parties, or any of them."

The defendants are the makers and endorsrs of a promissory note, against whom the plaintiffs have declared jointly, alleging that they made a certain note in writing, their own proper hands and names being thereto subscribed, by which they promised to pay the plaintiffs, ninety days after date, 5,000 dollars, which note the plaintiffs aver was discounted at the *Bank of Chenango.* The note was made by two of the defendants, and endorsed by the others; at the trial, the plaintiffs proved the handwriting of the makers and endorsers, and a regular demand of payment and notice. The defendants' counsel objected to the reading of the note in evidence, but it was admitted. It is now contended, that the note was not discounted at the bank, and, therefore, cannot be given in evidence to support the counts in the plaintiffs' declaration. Whether this objection was urged at the trial or not, is immaterial; the objection was general, and may be made here.

In order to determine whether it is well founded, we must recur to the original proposition made by the defendants, which was the basis of the loan. They propose to deposit 2,000 dollars, and take from the bank 5,000 dollars, the

whole of which is marked; the proposition regulates the extent of credit, when interest shall be paid, and on what sums; the plaintiffs accede to this. A loan is concluded on the terms of this proposition, and a promissory note is executed for 5,000' dollars, payable ninety days from *November* 17, 1818. By the statement annexed to the case, it appears, that on the 27th of *November*, the defendants withdrew from the bank the balance that remained of the note, and a part of the deposit; from this, it is evident, the bank did not advance the whole 5,000 dollars, but deducted a part, which must have been for the discount or interest. That the note in question was not discounted in the manner more generally practised at banks, I am not disposed to deny; but that it was not substantially the discount of a note, although terms and conditions were annexed, cannot be admitted. On the credit of this note the defendants raised a sum of money at a certain rate of interest; it was not the less a discount because made subject to special stipulations. The plaintiffs are no where restricted, in this respect, provided the contract they make is legal. The averment, therefore, was supported by proof. But, it is said, the endorsers were discharged, because the money could not be demanded when the note became due, no bills at that time having been returned to the bank.

The fact stated is true; but the consequence does not follow. In determining the liability of the defendants, we must look beyond the note. The proposition made by the defendants having been assented to, by the plaintiffs, became the contract between the parties, on which must depend the question of liability. By that it was agreed, that so long as the defendants kept the 5,000 dollars in circulation, they were *to pay no interest;* they were at no time to suffer a greater amount to arrive at the bank, than the amount of their deposit, and were to pay interest on all the money marked, from the time it arrived, until returned; and so long as the exchanges were kept good, so long they were to have the money; either party reserving the privilege of closing the concern, by giving six months notice; and provided the defendant did not keep the exchange good, the agreement was forfeited, and the plaintiffs were at liberty

to call for immediate payment. The answer to this objec-
tion is, that although the note could not be demanded at
the end of ninety days, yet being given to secure the pay-
ment of the money to which the contract referred, and
being subscribed by the endorsers, as well as the makers,
and requiring at least six months notice before payment
could be exacted, it must be considered that the defend-
ants have expressly waived an objection of this kind, and
that the endorsers have assented that this shall continue a
valid note; and that, according to the plain intent of the
parties, it should be controlled by the original proposition
and acceptance, so far as related to the time the money
was payable. The endorsers, therefore, were not dis-
charged on this ground, for they had, in effect, stipulated to
the contrary.

The same reasoning applies to the objection, that the
endorsers are discharged, because the time was extended
beyond that specified in the note. The endorsers are not
in a situation to urge this, for the note and contract must
be taken together; and then we find the endorsers, as well
as the makers, agreeing to the extension. Independent of
the contract, had the makers entered into a stipulation
with the holders to extend the time, there is no doubt the
endorsers would have been discharged. The authorities cited
abundantly prove this; but I have not discovered any au-
thority that applies the principle to a case like the present.
If the endorsers had paid the amount of the note, when it
fell due, they could not recover of the makers, because
they would have acted without request, and contrary to the
stipulation and understanding of all parties.

The declaration states, that the defendants made the note,
their own proper hands and names being thereto subscri-
bed; it is admitted, that all did not subscribe the note, for
two endorsed it, and that the note produced, varies from
the description given in the count; but the true question
is, whether, notwithstanding the variance, the note may not
be given in evidence under it. I think the statute has
settled this question, for all the parties, whether makers or
endorsers, are declared to be joint makers, and as such may
be declared against, and prosecuted to judgment. This

authorizes the form of declaring adopted by the plaintiffs, which is as on a note against the makers only; and for the purpose of conducting this action, considers the note as one made by the defendants jointly.

I fully concur with the counsel for the defendants, that this note could not be given in evidence under the money counts. The statute in this case has given a new remedy, not a new action; the evidence which supports the statute remedy does not apply to the common law counts. Although a note may be good evidence on the count for money lent against the makers, it is no evidence when the endorsers are joined. The note does not prove a joint cause of action against them for money lent; no such action, jointly, is known to the common law, and, therefore, the plaintiffs must rely solely on the count on the note, which I think is supported by the evidence.

But it is contended that the note is usurious. In examining this question, we must view the whole transaction as it passed between the parties, in order to determine whether there were any subtle devices or evasions to elude the statute. After an attentive consideration, it appears to me, that such was not the intent; but that this was a contract prudently entered into by the bank, to guard against the immediate return of their notes, which from their limited circulation was to be apprehended, and to prevent the necessity of stopping payment.

The defendants were to deposit 2,000 dollars, and take 5,000 dollars in notes of the bank, which were marked. So long as they kept the whole in circulation, that is, prevented it from returning to the bank, they were not to pay interest. This may have been difficult; but it cannot be said to be impracticable; and if so, the effect would be that the bank would have the benefit of the deposit of 2,000 dollars, but would receive no interest on 3,000 dollars of the money loaned: Instead thereof, their operations might be facilitated in not being compelled to redeem the money. Again; the defendants are to pay interest on all the money marked, from the time it arrives, until redeemed. The amount that might return within a given time, was altogether contingent. The defendants had the privilege, as well

as the plaintiffs, of closing the concern, by giving six months notice. If they found that the bills were returning to the bank sooner than they calculated, and to an amount that exceeded the 3,000 dollars, and thereby, in effect, subjecting them to pay more than legal interest, they could discharge themselves, on giving notice, at the end of six months. It was possible that before the end of that period, a large portion or the whole of the bills might have been returned ; and it is true, that in that event they were bound to pay interest, without any allowance of interest on the deposit; and in this way, they might be liable to pay interest on a larger sum than they received; but it does not follow, with certainty, that such would be the case : for example, if at the end of ninety days, 1,000 dollars had returned to the bank, and the defendants had then given notice to close the concern, and at the end of six months, no more than 3,000 dollars had returned to the bank, then the defendants would pay no more than legal interest, and probably less, as, in that case, the bank could only claim interest from the time the bills were returned, which would necessarily be less than legal interest, calculated from the time the discount was made. It cannot, then, correctly, be said, that usurious interest was, with certainty, reserved. It was altogether uncertain what would be the rate of interest, when the concern was closed. That depended on the amount of money returned, and the time when returned ; and would, in a great measure, depend on the continued credit of the bills, and the extent of their circulation. Whether the defendants would pay more or less than legal interest, could not be predicted. The contingency was nicely balanced : the contract appears to have been a fair one, and not intended as a cover for usury. From the terms of this contract, it follows, that the defendants, by keeping the money in circulation, had it in their power to have avoided the payment of any interest. The question then recurs, was there any thing like usury in this transaction ?

In *Floyd* v. *Edwards*, (*Cowp.* 115.) Lord *Mansfield* lays down the law in this manner : that whenever it is in the power of a known borrower of money, to pay the princi-

pal within a limited time, without interest, upon non-payment, the reservation of a larger sum than the statute allows, is no usury, because, usury is an agreement originally to pay the principal with more than legal interest. (6 *Com. Dig.* 433. *Clayton's case,* 5 *Co.* 69.) In the latter case, it is said, " if, upon the first contract, he who lendeth, reserveth no certain sum for the loan, but *secundario speret de aliqua retributione, ad voluntatem ejus qui mutuatus est, hoc non est vitiosum.*" In 1 *Hawkins' P. C.* ch. 82. s. 10. the same principle is fully recognized, where the authorities are collected. In *Cutler* v. *How,* (8 *Mass. Rep.* 259.) it was held, that where, by the terms of the contract, the party may, by payment at a certain day, avoid any stipulated penalty, such contract was not usurious. By the terms of the contract, in that case, the defendant might, by paying in sixty days, have avoided the payment of every thing but the discharge of what was previously due from him. I have already shown, that the defendants in this case might have done the same. The case of the *Northampton Bank* v. *Allen,* (10 *Mass. Rep.* 284.) is much stronger than the present. The plaintiffs loaned a sum of money, at a discount of six per cent. with an agreement on the part of the borrower, to redeem with specie the identical bank notes received by him on the loan, if they should be returned to the bank during the continuance of the loan, which was for six months; and, also, to purchase of the bank at par, with specie, during the loan, a certain amount of the bank notes not current. The Court considered this a lawful agreement; that the bank had a right to make arrangements in order to secure themselves against what is commonly called a run upon them; that it was not such a use of their moneys and effects, as is prohibited by their act of incorporation, nor was the contract usurious. In the last mentioned case the plaintiffs received the interest, and the defendant was bound to redeem the bills that returned, with specie, which was precisely the same thing as paying interest for them if not redeemed, and so far, it compares with this case. The defendant, in addition, was bound to buy bank notes, not current, at par, and herein the cases are distinguished.

On the whole, I am of opinion, that the contract is lawful, and not tainted with usury, and that, consequently, the plaintiffs are entitled to judgment.

Judgment for the plaintiffs.