Lord Mansfield is reported to have said that whenever it is in the power of a known borrower of money to pay the principal within a limited time without interest, upon non-payment the reservation of a larger sum than the statute allows is no usury. (Floger v. Edwards, Cowp. 112, 115.) He cites Hawkins P.C., chap. 82, § 119, which is to the same effect. The same doctrine is laid down in the older authorities, as in Ganet v. Foot
(Comberback, 133), where HOLT, Ch. J. held that "if I covenant to pay £ 100 a year hence, and if I do not pay it, to pay £ 20, it is not usury, but only in the nature of a nomine pœnæ." So inRoberts v. Venague (Cro. Jac. 517), one of the points stated as law by DODERIDGE, J., was this: "If I secure both interest and principal, if it be at the will of the party who is to pay it, it is no usury; as if I lend to one £ 100 for two years, and to pay for the loan thereof £ 30, and if he pay the principal at the year's end, he shall pay nothing for interest, this is not usury, for the party hath his election, and may pay it at the year's end, and so discharge himself." And the point was expressly adjudged in Burton's case (5 Rep. 68), where the agreement was that A. should lend B. one hundred pounds, and that B. should grant to A. and his heirs a rent of twenty pounds, in consideration that if B. should pay the one hundred pounds to A. on a certain day, which was before the day on which the rent was appointed to be paid, then the rent should cease, it was held not to be usurious, "for it was in the election of the grantor to have paid the one hundred pounds, and to have frustrated the rent. So that the grantee (as the nature of usury is) was not assured of any *Page 342 
recompense for the forbearance of his one hundred pounds for a year, and the said rent of twenty pounds is but a penalty to the grantor and assurance to the grantee for the payment of the said one hundred pounds." The same doctrine has been asserted and acted upon in more recent times. In Long v. Storie (10 Eng. Law and Eq. 182, A.D., 1852), usury was sought to be established in a security for a loan, from the circumstance that the money was not advanced until some time after the date of the instrument, which called for interest from that date at the rate of five per cent. But there was a provision in it by which the creditor agreed to receive interest at the rate of four per cent only if it was promptly paid. This reduction of interest, if the debtor availed himself of the provision, would more than countervail the excess which would have arisen out of the ante-dating of the instrument. And it was held, upon the dictum of Lord Mansfield, which I have referred to, that this was an answer to the imputation of usury, because the creditor, by making punctual payment of the interest, would not have paid beyond five per centum per annum. The same principle was affirmed and applied in the late supreme court of this state, inThe Bank of Chenango v. Curtiss (19 John. 326), where some of the fore going authorities were referred to as establishing the law as I have stated it; and in the case of Cutler v. How
(8 Mass. 259), the principle was applied to a contract which would have been plainly usurious but for an option reserved to the debtor to relieve himself from the usurious provision by paying in advance of the time fixed by the general terms of the agreement. But contracts of this character ought to be narrowly watched; for if the penalty was a mere contrivance to avoid the statute of usury, the arrangement will still be held usurious. This assertion was point edly inculcated in Burton's case, above mentioned, where, although the contract was saved, it was resolved by the whole court that notwithstanding the privilege of redemption *Page 343 
reserved, if it had been agreed between the parties that the one hundred pounds should not be paid at the day, "and the clause of redemption was inserted to make an evasion out of the statute, then it had been an usurious bargain and contract within the statute; for if, in truth, the contract be usurious against the statute, no color or show of words will save, but the party may show it, and shall not be concluded or estopped by any deed, or any other matter whatsoever, for the statute gives averment in such cases." And Lord Mansfield thought it necessary to guard against an abuse of the principle laid down by him as above mentioned, by the memorable declaration so often quoted, that where the real truth is a loan (or forbearance) of money, and more than five per cent be taken, the will of man cannot find a shift to take it out of the statute. (Cowp. 114.) It must be borne in mind that if more than the statute rate be received or taken, the event of which is to operate as a diminution or extinguishment of the interest, must not be anything other than the absolute will of the debtor. This was laid down in Burton's
case, and was adjudged in the case cited from Croke, James, and is moreover the ground of the decision in Cleveland v. Loder
(7 Paige, 557). Where, in such cases, the obligation to pay the excessive interest, is made to depend upon the happening of a collateral event, the principal must also depend upon the contingency. Where that is the case, the loan will not be usurious, unless the contingency is colorable and the agreement a cover for usury.
By the terms of the written agreement of Burdick, the usurious interest was not to be paid unless he should make default in the payment of the principal by the fifth day of December ensuing the making of the instrument. If that was a sincere and honest agreement, the undertaking was not usurious. But the day named was only five days from that on which the arrangement was made, and Burdick had, therefore, been unable to raise the considerable *Page 344 
sum which was to have been paid, and was applying for indulgence; and it does not appear that he had any expectation of raising the amount within the short period allowed by the writing. Hence there is pretty strong reason to believe that the sixteen dollars was paid to obtain a longer extension than the five days, and that this short period was inserted to give color to the agreement and to protect it from the imputation of usury. If the case has been properly put to the jury, the verdict, I think, must be considered quite satisfactory. Whether a particular contract, not usurious per se, is such on account of its being a cover for usury, upon the principles which have been stated, is generally a question for the jury. The defendant was entitled to have them properly instructed in matter of law, and the single question before us is, whether that was done in the present case. The point was first taken by a request to the court to direct a verdict of acquittal for the reason that the sixteen dollars was taken on a contract for a penalty for the non-performance thereof, and not for a loan or forbearance of money. The instruction was refused, but, as the case states, the court decided that there was evidence sufficient to submit the case to the jury. The exception to this disposition of the request was not well taken. There was undoubtedly evidence enough to raise a question as to the real intention of the parties. It is apparent, I think, from this request and the ruling upon it, that the idea of a colorable contract and a disguised arrangement for securing usury, was in the minds of the court and the counsel. It is inferable that the opinion of the court was that upon the strict reading of the contract the sixteen dollars was inserted as a penalty, but that the jury had a right to determine whether the stipulation was sincere or colorable only. The next step was the general charge to the jury, which is not given. The defendant then prayed to have the jury instructed that if the sixteen dollars extra was paid to the defendant, on the happening of any *Page 345 
contingency over which the said Burdick had a control, it was not usury. The request was not happily expressed, but it, no doubt, referred to the rule of law which I have stated, and it is sufficient to indicate a desire to have that rule laid down. The defendant could legally claim to have it stated to the jury, with its necessary qualifications which I have mentioned. If these qualifications were in the minds of the parties and the counsel, as it appears to me they were, the court could not properly state the principle without the necessary exception. Whether the whole subject had been properly explained in the charge which had been given, we cannot certainly know, but inasmuch as the court, in the denial of the first request, had stated that these were questions for the deliberation of the jury, it is fair to suppose that the real design of the arrangement constituted the matter which was to be left to them. I am, upon the whole, of opinion that the request was too strict and absolute. It embraced only a part of the legal proposition which the case called for, and that, if it had been charged in the terms suggested by the request, would have been calculated to mislead the jury. If I am right in this, the judgment of the supreme court, affirming the determination at the sessions, ought to be affirmed.
SELDEN and JOHNSON, JJ., concurred with DENIO, Ch. J.
All the other judges being in favor of reversal, judgment reversed. *Page 346