Mr Chief Justice Marshall
 

 delivered the opinion of the Court.
 

 This is’an action of replevin instituted in the circuit court for the county of Alexandria, and removed, for trial, to the county of Washington.
 

 The plaintiff in error, the original defendant, avowed as bailiff of William S. Moore, that the goods replevied were dis-trained for rent in arrear. The plaintiff in replevin, after craving oyer of the deed, by which the rent alleged to be in arrear was reserved, pleaded the statute of usury in bar of the claim. The plea alleged that the contract between the parties was a corrupt and usurious lending of the sum of 5000 dollars, upon an interest of ten per centum per annum.
 

 Other issues were joined in the cause, but they are not noticed because they are of no importance.
 

 On the trial, the plaintiff in replevin offered Jonathan Schol-field as a witness, who was objected ft) by the avowant, but admitted' by the court, and to this admission the avowant excepted.
 

 In support of his objection to the competency of the witness, the counsel for the avowant exhibited a deed, executed on the 11th of June 1814, by Scholfield and wife, to William S. Moore,
 
 *439
 
 by whose authority the distress was made; by which the said Scholfield and wife, in consideration of 5000 dollars paid by the said Moore to the said Scholfield, granted to the said William S. Moore, his heirs and assigns for ever, one certain annuity or rent of 500 dollars, t.o be issuing out of and charged upon a lot of ground, and four brick tenements and appurtenances thereon erected, lying in the town of Alexandria, and particularly described in the deed.
 

 Also a deed between the said Scholfield and wife of the first part, John Lloyd the plaintiff in replevin of the second part,, and Andrew Scholfield of the third part; conveying to the said John Lloyd the lot out of which the annuity or rent charge of 500 dollars, had been granted to William S. Moore. This deed contains several covenants, and, among others, a stipulation that the lot shall remain subject to the ánnuity to William S. Moore.
 

 Also the following letter from Scholfield to Lloyd.
 

 “Alexandria, June 9lh 1824.
 

 “Sir — As you hold under me the property on which I granted a rent charge of 500 dollars a year to William S. Moore, I now give you notice, the contract by which that rent charge was created I consider to be usurious, and that I shall take measures to set aside the same; and I hereby require you to withhold from William S. MooVe the payment of any farther money, on account of this rent charge; and in case distress should be made upon you for. the rent, I promise to save you harmless if you will resist the payment by writ of replevy.' I wish you to understand, that if you make.any farther payments after receiving this notice, that you make them at your own risk.”
 

 I am with great respect, yours,
 

 Jonathan Scholfield.
 

 To Mr John Lloyd.
 

 This letter was delivered to Mr Lloyd on the day of its date.
 

 Also a deed of the 18th of November 1826 from said Scholfield, making a conditional assignment of one-fifth of said annuity of 500 dollars to Thomas K. Beale in which he recites and
 
 *440
 
 acknowledges his responsibility to Lloyd, on account of the distress for rent made by William S. Moore.
 

 Also, an exemplification of the record of the proceedings in the county court of Fairfax, in the commonwealth of Virginia, upon the insolvency and discharge of the said Scholfield, as an insolvent debtor, in May 1822.
 

 Whereupon the plaintiff in replevin, to support the compe-' tency of the said Scholfield, laid before the court the following documents.
 

 A release from said Scholfield to the plaintiff in replevin, dated the 13th day of June 1831 ; whereby said Scholfield, in consideration of 5000 dollars released to him by the said Lloyd, out of a debt due by him to Lloyd, grants to said Lloyd all the right, title and interest, which he has, or may have, from the decision of the suit depending for the annuity or rent charge granted to Moore, or which he has, or may have thereafter, to the brick buildings upon which the said annuity or rent charge is secured. He also releases the said Lloyd from all covenants or Obligations, expressed or implied, arising out of the deed of assignment from him to said Lloyd ; and also from all claims, &c., which now exist, or may hereafter arise out of the said deed, &c. Also a release from the same to the same, dated 25th April 1828, in which Scholfield releases to Lloyd all his right, &c., to the said suit, &c., and to all sums of money which may accrue, and from all actions, &c., on account of the said suit, &c.
 

 Also, a release of the same date from Thomas K. Beale and James M. M’Crea, releasing the said Jonathan Scholfield from 950 dollars, part of a debt of 2000 dollars, due from him to them.
 

 Also, a release from Joseph Smith, of same date, releasing 1150 dollars, part of a debt of 3000 dollars, due tp him from said Scholfield.
 

 Also, a release of William Veitch apd Benoni Wheat, discharging the said Scholfield from 250 dollars, part of a debt of 800.dollars, due to them from him.
 

 ■ Also-an engagement.of John Lloyd, dated the 25th of April 1828, binding himself to the several persons who executed the foregoing releases for the several sums released by them, in the
 
 *441
 
 event of his succeeding in the .suit then depending between, himself and Charles Scott, bailiff of William S. Moore.
 

 Also a release from John Lloyd,'stating, that whereas Jonathan Scholfield stood indebted to him in a large sum of money; he had agreed to release, and did thereby release, the said Scholfield from 5000 dollars, part of the.said debt.
 

 In discussing the competency of the witness, some diversity of opinion prevailed on the question whether he could be received to invalidate a paper executed by himself; but, without deciding this question, a majority of the court is of opinion that he is interested in the event of the suit.- His letter of the-9th of June, to John Lloyd, the tenant in possession, requiring him to withhold from William S. Moore the payment of any farther sum of money, on account of this rent charge, contains this declaration :
 
 “
 
 andin case distress should be made upon you for the' rent, I promise to save you harmless, if you will resist the payment by writ of replevy. I wish you to understand, that if you make any further payments after receiving this notice, that you make them at your own risk.”
 

 This is an explicit and absolute undertaking, to assume all the liabilities which Mr Lloyd might incur by suing out a writ of replevin, 'if an attempt should be made to levy the rent by distress. Mr Scholfield then is responsible to Mr Lloyd for the costs'of this suit. This is a plain and substantial interest in the event of the suit, from which Mr Lloyd alone can release him. This liability was. incurred before'the sale and release from Scholfield to Lloyd of the 13th of June 1831; .and Mr Scholfield’s responsibility'depended on the decision of the suit in which he was called as a witness, unless his release to, and contract with Lloyd of the 13th of June 1831, could discharge him from it. That contract transferred to Lloyd all the interest of Scholfield, in the ground charged with the rent to Moore, but did not transfer with it his obligation to save Lloyd harmless, for resisting the claim of Moore to the rent in arrear. ‘ It produced a state of- things which removed all motives, on the part of Scholfield, for incurring fresh liabilities, but did not ■ discharge him from liabilities already incurred. It placed in his hands the entire management of the suit, but did not enable him to undo what was done, or to relieve himself from the claim of Moore to costs, should the suit terminate in his favour.
 
 *442
 
 The responsibility of Lloyd-to Moore continued, and the correlative responsibility of Scholfield' to Lloyd still continued also, unless Lloyd had released him from it. Now there is no expression in the contracts between the parties, which purports to be such a release. It has been inferred as the result of the change in the situation of the
 
 parties;
 
 but we do not think the inference justified by the fact. The obligation is unequivocal; is expressed in plain and positive terms ; is dependent on the event of a suit, and independent of the ownership of the property. The parties enter into a contract by which the property is‘transferred, without making any allusion to this obligation. It remains, we think, in full force; and, consequently, Jonathan Scholfield was an interested and incompetent witness.
 

 In the progress of the examination, the plaintiff’s counsel put to the witness the following question— f{did you, in the course of your discussions as tó the time you were to keep the money,.state your object in the application to be, to have the use of the 5000 dollars for a limited time
 
 1”
 

 To which the defendant’s
 
 counsel
 
 objected, as being a leading interrogatory. The plaintiff’s counsel then varied the question as follows:
 

 “ Did you or did you not, in the course of your discussions, &c.” To which the defendant’s counsel made the’same.objection ; but the court overruled the objection, and permitted the question to be put; and the defendant excepts-to that decision.
 

 Although the plaintiff’s counsel objected to this question, and said that he excepted to the opinion of the court; no exception is actually prayed by the party, or signed by the judge. This court, therefore, cannot consider the exception as actually taken, and must suppose it was abandoned.
 

 Evidence was given by the plaintiff in replevin, conducing to prove that the contract between Scholfield and Moore, under which the sum of 5000 dollars was advanced by the latter to the former, originated in an application for a loan of money; not for the purchase and sale of a rent charge or annuity. Scholfield applied to Moore to raise or borrow 5000 dollars,' securing him on an annuity or ground rent for one year: Moore proposed to let him have the money for ten years on the same security; After much discussion the parties agreed to split the
 
 *443
 
 difference, and that Scholfield should keep the money five years. Scholfield says his first proposition was to allow ten per cent and to secure it by an annuity or ground rent omthe houses mentioned in the deed. No other interest but ten per cent was mentioned ; Scholfield had no'in tendon of selling the property. It Was also in'evidence that' Moore was a money lender, and was in the habit of advancing money, secured on ground tents or annuities: and that Scholfield wasp money" borrower ; and that the property was an ample security for the ■money lent, and for the annuity.
 

 On the part of the avowant, it was proved, that the. usual value of those ground rents or annuities charged on lots in. Alexandria was such as to afford an interest of ten per cent per annum on the principal sum advanced ; and it was admitted by Scholfield that he gave Moore no promise, stipulation or security for the return of the 5000 dollars, other than is contained in the deed itself.
 

 Many witnesses were examined, and a great deal of tésti-mony, bearing more or less directly on the contract, was adduced.
 

 The deed from Scholfield and wife to W. S. Moore, by which, in consideration of 5000 dollars, the annuity or rent charge of 500 dollars per annum was created, contains a covenant. “ that the "said J. Scholfield, his heirs and assigns, will well and truly pay to the said W. S. Moore, his ■ heirs and as-, signs, the said annuity or rent charge of 500 dollars, by equal half yearly payments, on the 10th day of June and on the 10th' day of December, in each year, for ever hereafter, as the same shall become due ; and that if the same be not punctually paid, then it shall be lawful for the said W. S. Moore, his heirs and assigns, from time to time, on every such default, to enter on the premises charged, and to levy, by distress and sale of the goods and chattels there found, the rent in arrear and the costs of distress and sale ; and if the same shall remain in arrear and unpaid for the space of thirty days after any day of payment, as aforesaid, and no distress sufficient to satisfy the same can be found on the premises charged, then it shall be lawful for the said W. S. Moore, his heirs and assigns, to enter on the premises charged, and from thence to remove and expel the said J. Scholfield, his heirs and assigns, and to hold and enjoy
 
 *444
 
 the same as his, and their, absolute estate, for ever thereafter.”
 
 “
 
 And that the said J. Scbolfield, his heirs and assigns, will for ever hereafter keep the buildings and improvements which now are, or hereafter may be erected on the premises charged, fully insured against fire, in some incorporated insurance office, and will assign the policies of insurance to such trustees as the said W. S. Moore, his heirs or assigns, may appoint; to the intent that if any damage or destruction from fire shall happen, the money received on such policies may be applied to rebuilding or repairing • the buildings destroyed or damaged.”
 

 “ And lastly, that he and his heirs will for ever warrant and defend the annuity or rent charge hereby granted to the said W. S. Moore, his heirs and assigns, against any defalcation or deduction, for or on account of any act of him, his heirs or assigns.”
 

 The deed contained a farther covenant, that if, at any time afi.er five years, the said J. Scholfield should pay to the said W. S. Moore the s.um of 5000 dollars, with all arrears of rent, &c., the said W. S. Moore will execute any deed releasing or extinguishing the said rent or annuity.
 

 When the testimony was closed, the counsel for the defendant and avowant prayed the court tn instruct the jury, “ that the contract between said Jonathan Scholfield and William S. Moore, such as it is evidenced by the deed from said Scholfield and wife to said Moore, set out in the proceedings, and given in evidence by the plaintiff as aforesaid, was lawful and free of the taint of usury ; and in order to impeach it of usury, and support the issues of fact joined in this cause on the part of. the plaintiff, it is necessary for the plaintiff to prove, that besides the contract imported by the terms of said deed, there was an actual contract between said Scholfield and Moore for the loan of 5000 dollars at usurious interest, to wit, at the rate of ten per. cent per annum, to be disguised under the form and name of an anntiity or rent charge ; and that such sum was actually lent by said Moore to said Scholfield, and said deed given in pursuance and execution of such contract and loan, securing the said usurious interest under the form and name'of such annuity or rent charge ; that the facts given in evidence to the jury as aforesaid to support the issues above joined on the part
 
 *445
 
 of the plaintiff, did not import such a lending ol money by Moore to Scholfield, at usurious interest,-as was. sufficient to support the issues joined on the part of the plaintiff in replevin, upon the second and fourth pleas by the plaintiff in replevin,’ pleaded to the cognizance in this case.” Which instruction the .court refused to give; to which refusal the defendant and avowant, by .his counsel, prayed an exception, which was signed.
 

 The substantial merits of the case are involved in the subsequent instructions which the court actually gave ; and it will be apparent when we proceed to the consideration of those instructions, that if they ought to have been given, this ought to have.been refused. There are however, objections to the manner in which these instructions are'framed; which ought not to have been overlooked by the court. The statute against usurry not only forbids the direct taking of more than six per centum . per annum for the loan or forbearance of any sum of money, but it forbids any shift or device, by which this prohibition may be evaded and a greater interest be in fact secured. If a larger sum than six per cent be not expressly reserved, the instrument will not of itself expose the usury ; but the real corruptness of the contract must be shown by extrinsic circumstances, which' prove its character. Those circumstances must of course be viewed in connection with the contract. The counsel for the avowant asks the court to separate the instrument from its circumstances, and to inform the jury that the instrument itself was lawful, arid'free from the taint of usury ; and that to fix this taint upon it, the plaintiff in replevin must prove, besides the contract in the deed, an ictual contract, stipulating interest at the rate of ten per centum per annum for the loan of 5000 dollars.. Had this instruction, been given, circumstances which demonstrated the intention of the parties, and explained completely the contract actually made, if such existed, must have’ been disregarded by the jury. The-court is next requested to say to the jury, that the facts' given in evidence did not import such a lending as would support the issue.
 

 The court is thus asked to usurp the province of the jury, and to decide on the sufficiency of the testimony, in violation of the well established principle, that the law is referred to the court,
 
 *446
 
 the fact to the jury. The court .did not err in refusing to give this instruction.
 

 “The plaintiff then prayed the court further, to instruct the jury, that the-matters shown in evidence to the jury as aforesaid, are proper for the consideration-of the jury, to determine, from the whole evidence, under the instrúction of the court, as already given to them in this cause, whether the said contract so made between the said Moore and Scholfield was, in substance and effect, a loan at usurious interest, or a bona fide contract for the bargain and sale of a rent-charge ; and if the jury, from the said whole evidence under the instructions as -aforesaid, shall believe it to have been such a loan, they should .find for. the plaintiff; if otherwise, for the defendant.”
 

 The court gave this instruction, and the defendants excepted to it. Its correctness is now to be examined.
 

 . The-statute declares, “ that no person shall, upon any contract, take, directly or indirectly, for loan of any money,” &c., “ above the value of six dollars, for the forbearance of one hundred dollars for a year,” &c.
 

 It has been settled, that to constitute the offence, there must be a loan, upon which more-than six per cent interest is to be •received ; and it is also settled, that where the contract is in truth for the borrowing and lending of money,-no form which .can be given to it will free it from the taint of usury, if more than legal interest' be secured.
 

 . The ingenuity of lenders has devised many contrivances, by which, under forms sanctioned by law, the statute may be evaded. Among the earliest and most common of these- is the purchase of annuities, secured upon real estate or otherwise. The statute does not reach these, not only because the principal may be put in hazard, but because it was not the intention ■of the-legislature to interfere wii.h individuals in their ordinary transactions of .buying and selling, or other arrangements made with a view to convenience or profit... The purchase of an annuity therefore, or rent charge,
 
 ij a bona fide sale,
 
 has never been considered, as usurious, though more than six per cent profit be secured.- Yet it is apparent, that if givingithis form to the contract will afford a cover which conceals it from judicial investigation, the statute would become a dead letter. Courts, therefore, perceived the necessity of disregarding th.1*
 
 *447
 
 form, and examining into the real nature of the transaction. If that be in fact a loan, no shift or device will protect it.
 

 ■Though this principle may be extracted from all the cases, yet as each depends oii its own circumstances, and those circumstances are almost infinitely varied, it ought not to surprise us if there should be some seeming conflict in the application of the rule by different judges. Different minds allow a different degree of weight to the. same circumstances.
 

 The King v. Drury, 2 Lev. 7, is a very strong case in fayour of the avowant, and has been much pressed on the court by his counsel.
 

 Brown agreed to assign to Drue a lease of a house for forty years for'the sum of 300 pounds. Drue not having the money, Drury, by agreement with Drue, paid the 300 pounds, took the assignment to himself, and then let the house to Drue for thirty-nine and three quarter years, at a rent, of which 30 pounds was'payable to himself. Drury covenanted that if at the end of four years Drue paid the 300 pounds, he would convey the residue of the term to Drue. Per Hale", C. J. “This is not usury within the statute; for Drue.was not bound to pay the 300 pounds to Drury.” “ It is no more in effect than a bargain for an annuity of 30 pounds yearly, for thirty-nine and three quarter years, for 300 pounds to be secured in this manner, determinable sooner if the grantor pleases; but the grantee hath no remedy for his 300 pounds.” “ And sq the acceptance of the 7 pounds 10 shillings is not usury. But if Drury had taken security for the inpayment of the 300 pounds, or it had been by any collateral agreement to be repaid, and all- this method of bargaining a contrivance to avoid the'statute; this had been usury.”
 

 This case has been cited to prove, that, without an express stipulation for the repayment of the money advanced; a contract cannot be usurious, whatever profit may be derived from it. It must be admitted that although lord Hale does not say so in terms, the case, as reported, countenances this construction. But the accuracy of the report must be questioned; and it is believed that such a principle would not now be acknowledged in the courts of England.
 

 Chief Justice Hale considers the transaction simply as a bargain for an annuity, not as a loan of- money. Whether
 
 *448
 
 the circumstances of the case warranted this conclusion or not, it is the conclusion he drew from them. The negotiation between Drue and Drury, by which the latter advanced the money, became the assignee of the term, and then loaned it to the former, accompanied with- a power of redemption, are totally overlooked by the judges. It had no influence on the case'. It was not considered as affording any evidence, that the transaction was in reality a loan of money. The principle of law announced by the judge is simply, that a bargain for an annuity is not usury. He adds, that if the repayment of the 300 pounds had been secured, and all this method of bargaining a contrivance to avoid the statute, this had been usury.”
 

 He connects the bargaining, being a contrivance to avoid the statute, with a security for the repayment of the sum advanced, as if he thought this security indispensable to the effect of the bargaining, without which the contract could not be usurious.
 

 It is obvious that if this inference' of law from the fact be-admitted without qualification,- it will entirely defeat the statute. If an express stipulation' for the repayment of the sum' advanced be indispensable to the existence of usury, he must be a bungler indeed, who frames his contract on such- terms as to expose himself .to the penalties of the law. If a man purchases for 500 dollars an annuity for 200 dollars per annum redeemable at the will of the grantor in ten years, without any express stipulation for the repayment of the 500 dollars; this, according to Drury’s case, as reported, would be no inore than a bargain for an annuity; and yet the grantor-would receive| excessive usury, and the grantee would be compelled, by the very terms of the contract, to repay the 500 dollars as certainly as if he had entered into a specific covenant for repayment, on which an action could be maintained. Lord Hale cannot have intended this. . He has not said so in terms; and we must believe that he did not mean to require more than that, the contract should not be such as, in effect, to secure the principal sum advanced with usurious interest. ' It would be a very unusual stipulation in the grant of an annuity, that the money should be returned otherwise than by the annuity itself.
 

 ' So in Finch’s case, reported in Comyn on Usury 43, Canfield secured to Finch more than the legal interest on the money
 
 *449
 
 advanced by .a rent issuing out of land, and the court determined that it was not usury, though Canfield had applied for a loan of money which Finch refused, offering at the same time to let him have the sum by way of annuity or rent. This was held not to be usurious. “This,” said the court, “is not a contract commenced upon a corrupt cause; but an agreément for a rent which it is lawful for every one to make.” But it was said, that if twelve pounds in the hundred had been offered to be paid, (the legal interest was then ten per.cent) and the other had said that he would accept it, but that this wouid be in danger of the law, and therefore he did not like to contract upon these terms; but that if the other party would assure him an annual rent for his money then he would lend it; and upon this an agreement for the rent had been made: this would have been within the statute.” The same principle is decided in Cro. James 252. These cases turn on the evidence which shall be. sufficient io prove a loan to be the foundation of the; contract; but do not withdraw’ the casefrom the statute, if a loan be its foundation. They decide that a mere application for a loan does not convert a subsequént annuity, which yields a profit beyond legal interest, into a usurious contract; but that an actual contract for the loan, if converted into an annuity in order to avoid the law, is within the statute.
 

 In these cases the court decides upon the fact, and determines that a variation in it, the importance of which is not distinctly perceived, would bring the contract within the.law. In all of them, we think it probable, that a court of the present day would leave it to the jury to say, whether the contract was a fair purchase or a loan, and would direct the jury to find for the plaintiff or defendant, as their opinion on that fact might be.
 

 In Fuller’s case, 4 Leon. 208, and in Symonds v. Cockrell, Noy 151 and Brownlow 180, a distinction is taken between the purchase of an annuity without any communication respecting a loan, • and a purchase where the negotiation commences with an application to borrow money, though no contract of loan followed such application.
 

 In a case, between Murray and Harding, reported in Comyns on Usury 51, Markham, an attorney, at the request of Robert Harding, rector of Grafton Regis, applied to Mrs Mary Murray, to lay out 120 pounds in the purchase of ah annuity
 
 *450
 
 of 20 pounds a year for the defendant’s life, charged on his rectory of Grafton, redeemable by him at the end of the first five years upon the payment of 109 pounds 10 shillings. There was no communication with Her about a loan, but merely about the purchase of such redeemable annuity ; although Harding had mentioned to his attorney Markham, a wish to borrow 100 pounds or upwards.
 

 This case was brought before the court. In giving his opinion on- it, Chief Justice De Grey said, “communication concerning a loan has sometimes infected the case and turned the contract into usury, but then the communication must be
 
 mutual.”
 
 “I know no case where even, a meditated loan has been bona fide converted into a purchase, and afterwards held to be usurious. To be sure it is a strong and suspicious circumstance ; but if the purchase comes out to be clearly a bona fide purchase, it will notwithstanding be good.”
 

 “ If a power of redemption be given, though only to one side, it is a strong circumstance to show it a loan, as in Lawley v. Hooper. But that alone will not bo conclusive.”
 

 The chief justice added, “ in the present case the principal is precarious and secured only by the life of a clergyman, and his continuing to be beneficed.”
 

 In Lawley v. Hooper,
 
 2
 
 Atk. 278, Thomas Lawley, being entitled to an annuity of 200 pounds a year for life; sold 150 pounds, part thereof, to Rowland Davenant for 1050 pounds, with power to repurchase, on giving six'months notice. After the'death of Davenant, Lowry biought this bill against his executors for an account, and that upon payment of what should be due, the defendants might reassign the annuity to the plain tiff.
 

 In giving his opinion, the chancellor said, “ there has been a long struggle between the equity of this court, and persons, who have made it their endeavour to find out schemes to get-exorbitant interest and to evade the statutes of usury. The court, very wisely hath never laid down any general rule beyond which it willinot go.”
 

 “ In this case there are two questions to be considered. 1. Whether this assignment is to be considered as an absolute sale, or a security for a loan.
 

 “ As to the first, I think, though there is no occasion to de
 
 *451
 
 termine it; there is a strong foundation for considering it a loan of nfoney; and I really believe in my conscience, that ninety-nine in a hundred of these bargains are nothing but loans, turned into this shape to avoid the statutes of usury.”
 

 The chancellor then proceeds to state the circumstances under which the contract was made, and the character of the contract.itself; and although there was no treater about a loan, he considers.it as one. After enumerating the. circumstances, lie concludes with saying, “therefore, upon all the circumstances, I think it was, and is to be taken as a loan of money turned into this shape, only to avoid .the statute of usury; but I do not think l am under any absolute necessity to determine this point, for I am of opinion that this is such an agreement as this court ought not to suffer to stand, taking it as an absolute sale!” The relief asked by the plaintiff, in his bill, was granted.
 

 In the noted case of Chesterfield, Executor of Spencer v. Janssen, reported in 1 Atk. and 1 Wils., 5000 pounds was advanced by Janssen, on the bond of Mr Spencer, to pay 10,000 pounds should he survive the duchess of Marlborough. After the death of Mr Spencer, this bond was contested by his executor; and one of the points made was, that it was usurious. Thé cause was argued with great ability, and determined not to be within the statutes, because. the principal was in hazard. In giving this opinion, the judges define usury in terms applicable to the present' case.' “ To make this contract usurious,” said Mr Justice Burnet, “ it must be either because it is within the expresé words, or an evasion or shift to keep out of the statutes.” “ Whatever shift is used for the forbearance or giving day of payment, will make an agreement usurious; and is by a court and jury esteemed a colour only. Suppose a man purchase an annuity at ever such an under price; if the bargain was really for an annuity, it is not usury. If on the foot of borrowing and lending money, it is otherwise ; for if the court, are of opinion the annuity is not the real contract, but a method of paying more money for the reward or interest than the law allows, it is a contrivance that shall not avoid the statute.”
 

 The lord chancellor said, “if there has been a loan of money, and an insertion of a contingency which gives a higher rate of interest than the statutes allow, and 1 lie contingency goes to
 
 *452
 
 the'interest only, though real and not colourable, and notwithstanding it be a hazard,'yet it has been held usurious. Where the contingency has related to both principal and interest, and a higher interest taken than allowed by the statute, the courts havé then inquired whether it was coloúrable-or not.”
 

 Wilson reports the chancellor to have said, “ courts regard the substance and not the mere words of contracts. Loans, on a fair contingency to risk the whole money, are not within the statute ; a man may purchase an annuity as low as possible, but if the treaty be about borrowing and lending, and the annuity only colourable, the contract may be usurious, however disguised.”
 

 Richards qui tam v. Brown, Cowper 770, was an action on the statute of usury. Richard Heighway applied to Brown for a loan of money, to which Brown assented, and advanced part of the money, promising to advance the residue, being 400 pounds, in a fortnight. After some delays, Brown said he could not raise the money himself, but would try to get it of a friend, in the city, who was a hard man: Heighway said he would give twenty or thirty guineas rather than not have the money. Bfown said, “that his friend never lent-money but on an annuity at six years purchase. However,” he added, “if you will take the money on those terms, I will engage to fur-’ nish you with money to redeem in three months’ time.” Heigh-way executed a bond and warrant of attorney, for conveying the annuity to one Waters. The money was really advanced by Brown, and the name of Waters was used by him. Heighway deposed that Brown first proposed the annuity. He himself would not have granted one. Heighway pressed for the money to redeem, but Brown refused it.
 

 LorffMansfield told the jury that if they were satisfied, “that,, in the true contemplation of the. parties, this transaction was a purchase by the one, and a sale by the other, of a real annuity, how much soever they might disapprove of, or condemn the defendant’s conduct, they must find a verdict for him. But on the contrary, if it appeared to them to have been in reality and truth, the intention of both parties, the one to borrow and the other to lend, and that the form of an annuity was only a mode forced on the necessity of the borrower by the lender, under colour of which he might take an usurious and exorbit
 
 *453
 
 ant advantage, then they might find for the plaintiff, notwithstanding the contingency of the annuitant dying within three months.”
 

 The.jury found for the plaintiff.
 

 On a motion for a new trial, lord Mansfield said, “ the question is, what was the substance of the transaction and the true intent and meaning of the parties, for they alone áre to govern, and not the words used. The substance here was plainly a borrowing and lending. Heigh way had no idea of selling an annuity, but his declared object Was to borrow money.” “ It is true there was a contingency during three months. It was that which occasioned the doubt, whether a contingency for three months is sufficient to take it out of the statute.”
 

 The new trial was granted.
 

 In the case of Irnham v. Child, 1 Br. Ch. Rep. 93, lord Thurlow is reported to have said (referring to previous dicta), “all therefore that seems to be meant is this, that the annuity, shall be absolutely sold without any. stipulation for the return of the principal; and that it shall not be intended as a means of paying interest until such principal is returned. But where there is-a sale it .is not usurious to make it redeemable.”
 

 In Drew v. Power, 1 Schoales and Lefroy 182, the plaintiff being much embarrassed in his circumstances, communicated to the defendant his desire to raise money to extricate himself from his debts. After approving his purpose and increasing sufficiently his anxiety for its accomplishment, the defendant informed him that two of his estates, Poulagower and Knock-avin, would shortly be out of lease, and that if he would make the defendant a lease of them for three lives, at the rent of 200 pounds per annum, he would, from friendship, advance him money sufficient to pay all his debts. The plaintiff assented to this proposition. The bill then proceeds to charge much unfairness and oppression on the part of the defendant in making advances towards paying the debts of the plaintiff, and states that he claimed a balance of 1015 pounds and 15 shillings, for which he demanded the plaintiff’s bond. This was given. The defendant then required a lease for Poula-gower and- Knockavin, which was executed for three young liyes, at the rent of 200 pounds per annum, which was greatly below their value. The defendant also obtained other leases
 
 *454
 
 fro lit the plaintiff.
 
 The
 
 bill details a great, variety of other transactions between the parties, which are omitted as being inapplicable to the case now before this court. The bill was brought for a full settlement of accounts, and that on payment of the balance fairly due to the defendant, the leases he had obtainéd from the plaintiff might be set aside.
 

 The defendant, in his answer, denied the charges of oppressive and iniquitous conduct set up in the bill, and insisted that the lands called Poulagower and Knockavin, having been advertised to be let, he agreed to take them at a valuation, and insisted that he paid a fair rent for them.
 

 The cause came on to be heard before the master of the rolls, who directed several issues to try whether the full and fair value of the landswere reserved .on the leases granted by the plaintiff to the defendant; and whether either, and which of them were executed, in consideration of any and what loan of money, »nd from whom.
 

 The case was carried before the lord chancellor, who disapproved the issues, and gave his opinion at large on the case. After commenting on the testimony respecting the leases, he says, “ Hastings has distinctly proved, that the loan of money was the inducement to this lease,' and if it was, it vitiates the whole transaction. I do not mean advancing money by way of fine or the like ; but where it is a distinct loan of money-to a distressed man, for which security is to be taken, and he is still to continue a debtor for it. If I were to permit this to be considered asa transaction which ought to stand, I should permit a complete evasion of the statute of .usury.” The chancellor concluded a strong view of the testimony, showing a loan of money to be the consideration on which the leases were granted, with saying,
 
 “
 
 there is no reason to send this case to a jury.” “ There is sufficient to satisfy the conscience of the court,- that these leases ought not to stand.”
 

 The case of Marsh v. Martindale, 1 Bos. and Pul. 153, was a judgment on a bond for 5000 pounds. The consideration on which the bond was given, was a bill drawn by Robert Wood on Martindale, Filet & Co., for 5000 pounds, payable three years after date. The bill was accepted, the interest discounted by Sir Charles Marsh, and the residue of the money paid to
 
 *455
 
 Marlindale, for the purpose of enabling him to discharge certain annuities for which he was liable.
 

 On a motion for a new trial, lord Alvanley, chief justice, said, “it was contended that the transaction was to all intents a purchase of an annuity; and this certainly was the strongest ground which the plaintiff could take; for it has been determined in all the cases on the subject^ that a purchase of ah annuity, however exorbitant the terms, may be, can never ' amount to usury. But if the transaction respecting the annuity be under cover for the advancement of money by way of loan, it will not exempt the lender from the penalty of the statute, or prevent the securities from being void. Then is this transaction the purchase of an annuity or is it not
 
 1”
 
 After restating the transaction, the judge asked “ what is this but forbearing for .three years to take the sum of 4250 pounds, for which forbearance, he was to receive interest on 5000 pounds.”
 

 The judge referredto the.case in Noy 151, as applicable to this. “There,” he said, “ a question having arisen, whether a deed securing arent charge were void for usury, the court agreed that if the original contract were to have a rent charge, that is not usury, but a good bargain ; but if the party had come to borrow the money, and then such a bargain had ensued by security, then that is usury.”
 

 Doe, on the demise of Grimes et ah, assignees of Hammond (a bankrupt) v. Gooch,.was an. ejectment. Hammond had taken ground on a building lease at the rent of 108 pounds per annum. He assigned the premises to Roberts for 2300 pounds, a sum considerably above their then value, and at the same time took a lease from Roberts at the increased rent of 395 pounds, containing the same covenants for building as were in the'original lease, together with a stipulation that he . should be at. liberty, on giving six months notice, to re-purchase the premises at the same price for which he had sold them to Roberts. Hammond completed the houses; and, having become a bankrupt, his assignees brought this action against the tenant of Roberts. The judge left it to the jury to say whether the transaction between Hammond and Roberts was, substantially, a purchase or a loan; and told them, “ that if they thought it was a loan, the deeds were void, the transac-action being usurious.” The jury found a verdict for the plaiu-
 
 *456
 
 tiff. On a motion for a new trials counsel contended that the deeds imported a purchase. That the principal money was altogether gone, unless Hammond chose to redeem; and, though it may be his interest so to do, this will not make it an usurious transaction.' If a person have an annuity secured on a freehold estate, it may be clearly his interest to redeem it ; but such a power will not make the bargain usurious. Here Bailey, justice, observed, “in that case the principal is in hazard from the uncertain duration of life. Here it is in the nature •of an annuity for years, and there is no case in which an annuity for years has been held hot to be usurious, where, on calculation, it appeared that more than the principal, together with legal interest, is to be received.”
 

 The new trial was refused.
 

 In the case of Low v. Waller, Doug. 735, lord Mansfield told the jury, “ that the statute of usury was made to protect men who act with their eyes opgn; to protect them against themselves.’5' “ They were to consider whether the transaction was not in truth a loan of money, and the sale of goods a mere contrivance and evasion.”
 

 Thé jury found the contract to be usurious. Oh a motion for a new trial, lord Mansfield said, “ the only question in all cases like the present, is, what is the real substance of the transaction, not what is the colour and form.”
 

 Gibson v. Fristoe, 1 Call 62, was an action of debt brought by Gibson against Fristoe et'al., in the district court of Dum-fries.' Issue was joined .on the plea of .¿he statute of usury; Verdict and judgment for the defendant, and appeal to the court of appeals.
 

 The case was shortly this, John Fristoe being, indebted to John Gibson, by bond, for 445 pounds 11 shillings and 2 pence sterling, on the 17th of December 1787, assigned him bonds of perfectly solvent obligors for 780 pounds currency, at the agreed value of 382 pounds 8 shillings and 2 pence sterling, and gave a new bond with two sureties for a balance of 106 pounds 17 shillings and 2 pence sterling, payable in March following.
 

 Mr Washington, for the appellant, said, “in all these cases the first inquiry is, if there be á loan.' I admit that'if a real loan is endeavoured to be covered under any disguise .whatever, it is still usury.” He contended that here was no loan,
 

 “ but a purchase of property, for bonds are property.”
 

 
 *457
 
 In giving his opinion, Mr Pendleton, the president of thp court of appeals, said, “ an agreement by which a man secures to himself, directly or. indirectly, a higher, premium than six per cent for the loan of money, or the forbearance of a debt, is usury. If the principal or any considerable part be put in risk, k is not usury; because the excess in the premium is the consideration of that risk.” “ But if the bargain proceeds from and is connected with a treaty for the loan or forbearance of money, it is usury; because the vendor is supposed to have submitted to a disadvantageous pric? under the influence of that necessity which the statute meant to protect him against.”
 

 The judgment of the circuit court was affirmed.
 

 ' Clarkson’s Administrator v. Garland, and another reported in Í Leigh, was a bill in. chancery, brought by the plaintiff to be relieved against several contracts, bonds and deeds of trust, alleged to be usurious. The bill states numerous usurious and oppressive transactions, which are generally and particularly denied in the answers. Testimony was taken, and the case, so far as it is applicable in:principle to that under consideration, is thus stated.
 

 Clarkson, wanting to raise 2235 .dollars, applied to Jacobs, and offered him as many slaves as would command that sum; Jacobs advanced him, on the 23d of March 1815, 2335 dollars, and took an absolute bill of sale' for sixteen slaves.' It was at the same time agreed that the slaves should remain in Clark-son’s possession on hire for one year, and if at the end of the year, Clarkson shall pay Jacobs 2935 dollars, Jacobs shall, in consideration thereof, resell the slaves to him. The plaintiff charged that his application to Jacobs was to borrow money, and that the substance of the transaction was a loan, reserving a higher interest than is allowed by law.
 

 On the 22d of May, Clarkson again applied to Jacobs,, and ■ obtained from him the further sum of2666 dollars and 26 cents. For this sum he also gave Jacobs a bill of salé for fourteen slayes, redeemable by the payment of 3394 dollars, on or before the 23d of March 1816.
 

 The plaintiff 'avers that .this also was a loan, and that the pretended sale of sláves was a device to cover the taking of usurious interest.
 

 
 *458
 
 Jacobs, in his answer, avers that both contracts were in truth what they purport to be, bona fide' agreements to purchase and resell the slaves therein mentioned.
 

 The slaves not being redeemed, Garland, with full knowledge of the usury, as the bill charges, became jointly interested with Jacobs in both contracts. In August 1816, they procured Clarkson’s bond for 7000 dollars, being the aggregate of both debts, with farther usury for forbearance.
 

 The court declared both contracts to be usurious.
 

 Douglass v. M’Chesney,
 
 2
 
 Randolph 109, was a bill, to be relieved from two bonds and a deed of trust, given by the plaintiff to the defendant. The bill states that Douglass applied to M’Chesney to borrow 500 dollars; M’Chesney replied that it was his practice, whenever he lent money, to sell a horse, which Douglass professed his willingness to purchase. Some time afterwards the complainant went by ap-. pointment to the house of M’Chesney, who showed him a horse for which he asked 400 dollars. The plaintiff avers that ,the horse was not worth more than 80 or 100 dollars, but urged by his necessities, and knowing that he could not get the 500 dollars'from M’Chesney, without giving his price for the horse, he assented to the proposal, and executed two bonds for the money, which were secured by a deed of trust. When the bonds became due, M’Chesney advertised the property for sale ; and this bill was brought to enjoin farther proceedings, and to be relieved.
 

 The testimony proved, that the horse was not worth more than 100 dollars, and that it was reported to be M’Chesney’s practice when he lent money, to sell a horse at an exorbitant price to cover an usurious gain.
 

 • The chancellor dissolved the injunction, and the plaintiff appealed.
 

 The court of appeals was of opinion that a tacit understanding between the parties, founded on a known practice of the appellee to lend money at legal interest, if the borrower purchased of him a horse at an unreasonable price, would be a shift to evade the statute of usury.
 

 - The decree was reversed; but the court being of opinion that the questions of fact would be decided more understanding^ by a, jury on viva voce testimony, remanded the cause
 
 *459
 
 to the court of chancery, with directions to have issues tried to ascertain the value of the horse, and whether Douglass was induced to purchase him at the price of 400 dollars by the expectation of a loan.
 

 The covenants in the deed of the 11th of June' 1814, granting the annuity, have been stated. They secure the payment of ten per cent for ever on the sum advanced. There is no hazard, whatever in the contract. Moore' must, in something Thore than twenty years, receive the money which he advanced to Scholfield, with the legal interest on it, unless the principal sum should be returned after five years; in which event, he would receive the principal with .ten per cent interest till repaid. The deed is equivalent to a bond for 5000 dollars, amply secured by a mortgage on real property, with interest thereon at ten per centum per annum, with liberty to repay the principal in five years. If the real contract was for a loan of money, without any view to a purchase, it is plainly within the statute of usury; and this fact was very properly left to the jury. - There is no error in this instruction.
 

 The counsel for the defendant then prayed the court to instruct the jury, that if they shall believe from the evidence aforesaid, that the land out of which tbe said rent charge mentioned in said deed from Scholfield to Moore was to issue, was in itself, and independently of the buildings upon the same, wholly inadequate and insufficient security for said rent; that then the jury cannot legally infer, from the clause in said deed, containing a covenant on. the part of said Scholfield to keep the said houses insured, any thing affecting said contract with usury or illegality ; which instruction the court refused :. whereupon the defendant prayed the court to instruct the jury as follows', to wit, that if the jury shall believe, from the evidence, that the fair and customary price of annuities and rent charges, at the date of the said deed from Scholfield, was in the market of Alexandria ten years’ purchase, and so-continued for a period of years; then,' from the circumstances of the rent being ten per centum on the amount advanced, the jury cannot legally infer from such circumstance, any .thing usurious or illegal in the contract.
 

 But the court refused to grant the said instructions, or either of them,as prayed by the counsel for the defendant; whereupon,
 
 *460
 
 the said counsel excepted to the said opinion of the court, and its refusal to give either of the said, instructions as prayed.
 

 It is obvious that the instructions given by the court,' at the prayer of the plaintiff’s counsel, cover the whole matter contained in this prayer of the defendant. It is, in truth, an effort to separate the circumstances of the case from each other, and to induce the court, after directing the jury that they ought to be considered together, to instruct them that, separately, no one of them amounted in itself to usury. The court ought not to have.' given this instruction. It was proper to submit the case, with all its circumstances, to the consideration, of the'jury; and to leave the question whether the contract was, in truth, a loan, or the bona fide purchase of an annuity, to them.
 

 There is no error in the' opinion of the court refusing the second and fourth instructions prayed by the defendant and avowant in the court below, nor in giving the instructions prayed, by the plaintiff in replevin; but this court is of opinion, .that the circuit court erred in deciding that Jonathan Schol-field was a com retent witness 'for the plaintiff-in that court. This court doth, therefore, .determine, that the judgment of the circuit court be reversed and annulled, and that the cause be remanded to that court with directions to set aside the verdict, and award a venire facias de novo.
 

 This cause came on to be heard on - the transcript of the record from the circuit court of the United States for t[ie.Dis-trict of-Columbia, holden in and for the county of Washington, and -was argued by counsel; on consideration whereofj it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and' the same is hereby reversed and annulled, and that this ca.use be and the same is hereby remanded to the said circuit court with directions to set aside the verdict and award a venire facias de novo.