Scates, Justice, delivered the opinion of the court: (1) McGill executed a mortgage to Ware; and afterwards sold the equity of redemption, which came by mesne assignment to Manning. Ware filed his bill to foreclose the mortgage, and made both McGill and Manning defendants. They filed separate answers, admitting all the facts in the bill, but insist [* 24] that the contract was usurious. The answers disclose the following facts: On the first day of June, 1883; McGill . borrowed of Ware $2500, for five years, at twelve per cent, interest per annum, payable in advance, for which he executed his note.- After deducting $800, the interest of $2500 for One year at twelve per cent., Ware paid him $2200.' McGill, on the same day, executed his four several promissory notes,'for $300 each, the yearly interest.on $2500 at twelve per cent., payable sever- ■ ally one year in advance, to wit, on the 1st of June, 1834,1st of of June, 1835,1st of Juñe, 1836, and 1st of June, 1837. The answers prayed a forfeiture of threefold the amount of usurious interest. All the interest notes bad been paid. The court decided that on default of the payment of the note for $2500 and the interest due thereon, by a day named, the plaintiffs should be forever foreclosed of all equity of redemption. The assignment of error questions this decree ; and the refusal to decree a forfeiture of three-fold the amount usuriously reserved. By our statute, a party may, by express agreement, take interest at the rate of twelve per centum per annum. R. L. 349, §1; Gale’s Stat. 343. But whenever in any action brought upon any contract or assurance for the payment of money or other thing, it shall appear to the court, by the pleadings, and on application of the defendant, that a greater rate of interest shall have been directly or indirectly reserved, discounted, or taken, than is allowed by the act, the defendant shall recover his costs, and the plaintiff shall forfeit threefold the amount of the-whole interest. R. L. 349, §3 ; Gale’s Stat. 343. It is contended that the deduction of the interest for one year, in advance, out of the principal, is usurious. The statute of Anne made the contract reserving usurious interest void, while ours does not. This difference should not be forgotten, as the rights of the parties, and of the assignees of the contract, mortgagees, etc., would be very different under the two statutes. The rule laid down in the English and American decisions is, that there must be a corrupt agreement, by some device or shift, to take or reserve a greater rate of interest than is allowed by law. Cro. Eliz. 642, 741; Cro. Jac. 507; 2 H. Blac. 865 ; Cowp. 112; 1 Bos. and Pul. 144; 3 Barn, and Aid. 664; 7 Barn, and Cres. 481; 9 Peters 399, 438; 2 Cowen 678, 712; Ord on Usury 37; 2 Chit. Plead. 467; 1 Saund. R. 295, a. n. 1. If the contract be fair and bona fide upon its face, proof aliunde is admissible to show the usurious consideration; and it is a question of fact (9 Peters 438) and courts would now leave it to a jury. 1 East. 94 ; 2 Cowen 706. In the case in 2 Atkyns 278, the court looked into all the circumstances. The questions, in a great many of the English cases, were upon annuity deeds. And it is well settled, that if the • sale is [* 25] Iona fide, and not a colorable loan, no inadequacy of price will make it usurious. Cowp. 770; 9 Peters 438; Comyn on-Usury 43; 3 Wilson 394; Cro. Jac. 252; Bro.Ch.R. 93; 1 Sch. and Lef. 182; 1 Yern. 467; Doug. 735; 1 Bos. and Pul. 153; Noy 151. Nor will a clause of redemption make it so. 9 Peters 438. Nor will the reservation of usurious interest, if there be a real hazard as to the repayment of the principal. 2 Paige 268; 9 Wilson 335. In the case before us, there are no circumstances showing a corrupt agreement to evade the statute, other than the reservation of one year’s interest out of the principal loaned. There is a dictum of Lord Mansfield, in 1 Cowp. 112, that it is not usurious for a bank upon discounting a bill or note, to retain the interest in advance, out of the principal. But it had been previously held, in Barnes v. Worlich, reported in Cro. Jac. 25; Moor 644; Yelv. 30; Noy 41; and 1 Bulstr. 20, and called Morley’s case, that it is usurious to deduct the interest out of the loan; though it appears that Justice Blackstone differed with the court on this question. The other question was whether the reservation of interest half yearly was usurious, and it was held not to be. Chief Justice Savage,-in the Bank of Utica v. Wager, 2 Cowen 767, in tracing the history of the adjudications of this question, says this was the first decision, and made about A, D. 1600 before the statute of Anne. The first dictum to the contrary is said to be in Lloyd v. Williams, 2 W. Black. 792, which was an action on . the statute for penalty. The next dictum was that of Lord Mansfield in Floyer v. Edwards, in 1774. 1 Cowp. 112. It was an action for goods sold on three months credit, with an agreement to pay an half penny-per ouhce per month, from the expiration of the credit, until paid; which was held not to be usurious; because, it being a usage of trade among the gold refiners, it showed an absence of a corrupt intention to evade the statutes, and which, as before remarked, is now a well settled rule in these eases; allowing even a mistake in fact to take a case out of the statute, (2 Cowen 705,) though not a mistake in law; for, saj^s Justice Sutherland, “ unless there be somethinglin the case of usury, to distinguish it from all other cases, their ignorance or mistake in relation to the law, can afford them no protection. The payment and receipt of usurious interest, is prima facie evidence of usury.” 1 Saund. 295, b, in note. Although the reason may explain the intention, yet it cannot abrogate the statute. In Dunham v. Gould, 16 Johns. 373, chancellor Kent says, in relation to usury, “ the custom of merchants is not applicable to such a case. It is not a matter of trade and commerce, within the meaning of the law merchant; and if there were such a local usage, it would be null and void.” This question was again adjudged in 1787, in Auriol v. Thomas, 2 Term R. 52, and Winch, v. Fenn, n. c to that case, and in Hammet v. Yea, 1 Bos. and Pul. 143, and cases there [*26] cited. In the case in 2 Peters 533, depreciated bant bills were paid in discounting the note; the court thought it a loan of those bills at par, and not a bona fide sale, and therefore usurious. So also in the case in 9 Peters 399, depreciated bills were paid to the borrower; but as the bank which issued the bills was solvent, and the borrower declared they were equal to par to him, the transaction assumed the character of a bona fide purchase of bills, and the court held it not usury. But in the same report, 9 Peters 438, although it was in form the purchase of an annuity, yet it was in reality a loan, and held to be usurious. Ch. J. Marshall, in this case, seems to doubt the law of the case in 2 Levinz 7, which was upon the assignment of a lease ; because there was a clause of redemption, which threw suspicion on its character as a purchase, and which the court overlooked. So in 1 Call. 62, it was held that the sale of bonds on solvent men, at an usurious discount, was but a colorable loan, and therefore usury. The case of Hammet v. Yea, 1 Bos. and Pul. 143, was a discount of bills at four months, taking interest for the whole time they had to run, and paying partly in cash, partly in bills on London, at three, seven, and thirty days, and passing part to his' account in bank. This was held not to be usurious. The court evidently resorting, in favor of trade and commercial dealing to an expedient in presuming that the excess was for commissions and expenses in transmitting the money to London. Here we see the germ of that distinction which has been made between banking and commercial transactions, in the discounting of bills of exchange, promissory notes, and other negotiable paper, in the course of trade, and other loans of money. Ch. J. Savage, in the Bank of Utica v. Wager, says, “ this privilege of deducting the interest by way of discount, I apprehend, is confined to bankers, and those who deal in bills of exchange or promissory notes, by the way of trade. This is so, at least, in England.” In that case there are calculations,, and also a table of the difference between discount and interest, by which, as one instance, it appears that the -difference on $1000 for fifteen years, at 6 per cent., is $537.80 and he says, “were the question upon this practice res integra, I should think it a palpable violation of the statutebut he adds, after citing the cases of The Manhattan Company v. Osgood, 15 Johns. 168, and Fleckner v. Bank of the U. S., 8 Wheat. 838, “ both courts found their decision upon the practice of bankers and commercial convenience,” and “the point may, therefore, be considered as settled until the legislature alters it.” Still, chancellor Kent, in Dunham v. Gould, says, “itisper-fectljr idle to talk of a custom of merchants to take a commis-si] sion above thelegalrate of interest on the exchange of notes. Custom of merchants is not applicable to such a case. It is not matter of trade and commerce within the law merchant, and if there were such a local usage in New York, it would be null and void, and could not be set up as a pretext or cover to trample down the law of the land. The money lenders throughout the country might as well set up a practice of their own, and then plead it in bar of the statute.” Again, in N. Y. Firemen’s Ins. Co. v. Ely, 2 Cowen 707, justice Sutherland says, “ where the law is clear, no usage can control it,” and cites as authority Cro. Eliz. 85, per Ld. Kenyon, in Matthews v. Griffiths, Peak, N. P. Cas. 202; ex parte Aynsworth, 4 Ves. 678; Ord on Usury, 596; the King v. Major, 4 Term R. 750. Yet, in this case, and the former one cited, as also in the Bank of Utica v. Smalley, Ibid. 770; N. Y. Firemen’s Ins. Co. v. Sturgis, Ibid. 676, deducting interest in advance was held not to be usury; though several of them were so held on account of the computation of time being erroneous. The same doctrine was held in other cases. 2 Cowen 676, 703, 763; 12 Pick. 589; 9 Mass. 49; 8 Wheat. 838; 3 Day’s Cas. 26; 16 Johns. 367; 19 Johns. 326; 15 Johns. 162. The calculation upon discount and interest, appears so palpably against the statute, that the courts seeming dissatisfied with the practice of bankers, and the course of trade in bills of exchange, promissory notes, and negotiable paper, as a basis to rest their decisions upon, have also resorted to definitions. “ Banking” is said to be a “ continuation of discount and deposit (2 Cowen 697) ; and an authority to make discounts means authority to receive the interest in advance.” 8 Wheat. 354. This definition and construction will not sustain the position, for our statute prohibits any greater sum “directly or indirectly” to be “reserved, discounted, or taken” than is allowed by the act. Yet justice Blackstone, in Lloyd v. Williams, and chief justice Savage, in Bank of Utica v. Wager, each makes a calculation .showing that to retain it would make more, the former than 5 per cent., and the latter than 6 per cent., while they hold it not to be usury. The former says, “ that interest ma.y as lawfully be received beforehand for forbearing, as after the term is expired for having forborne; and it shall not be reckoned as only a loan of the balance. Else every banker in London, who takes 5 per cent, for discounting bills, would be guilty of usury ; for, if upon discounting a ¿£100 note at 5 per cent., he should be construed only to lend ¿£95, then, at the encl of the time, he would receive ¿65 interest for the loan of ¿695 principal, which is above the legal rate.” 3 Wils. 250. The latter says, “ the bank lends a man $1000 for a year, but actually advances him $930 only. The other $70 they lend to somebody else, and deduct the interest again. But for the purpose of the present illustration, I will suppose the whole $70 lent.. At the end of the year, then, they receive from the first borrower their principal, $1000; from the second borrower. $74.90; making an excess of $4.90 beyond the legal inter- [* 28] est, which on a capital of $500,000 will produce $2450, On the other hand, if the borrower puts his $930 out at interest, he will have at the end of the year, $995.10 only, with which to pay the $1000 borrowed. He therefore loses $4.90; which the bank gains beyond the lawful interest.” I leave it to others to reconcile, if they can, the calculations and the adjudications sustaining the deduction of the interest out of the principal in advance. Yet, so the doctrine is settled in numerous cases ; while at the same time, it is as well settled that “ where the law is clear, no usage can control it; ” and it also appears that the courts of the United States and England “found their decisions upon the practice of bankers, and commercial convenience,” upon a question in which “ it is perfectly idle to talk of a custom of merchants to take a commission above the legal rate of interest, on the exchange of notes.” Custom of merchants is not applicable to such a case; “a case where the money lenders,” not only, “might as well set up a practice of their own, and then plead it in bar of the statute;” but where they have done it. The loan in this ease was of $2500, on a negotiable note, at the rate of twelve per centum per annum for five years. The interest on $2500, at 12 per cent, for one year, is $300. The defendant deducted this interest out of the principal, and actually paid over $2200 only, the true amount forborne; the interest on which would be $264, for one year ; the difference being $36, which would be an excess above the legal rate of interest upon the sum actually loaned. It has been urged that the whole money is paid over in such cases, and that the borrower afterwards pays back the interest in advance, out of his own money; and it may be of other moneys, still, if, by the contract, the amount of interest is reserved to be paid in advance, the balance, after deducting it, is all that is forborne; and more is indirectly discounted, or reserved, by the contract, than is authorized. This is so plain, that while courts have sustained the transaction, they have admitted that the same exceeds the true amount according to the plain reading of the statute; and have put it upon the practice of banks, the convenience of commerce, and the absence of a corrupt intention. This latter rule is not sustainable under our statute. A little attention to the history of the legislation on this subject, will show that the English decisions are not applicable to our statutes. Chief Justice DeGray, in Lloyd v. Williams 3 Wills. 260; the chancellor, in Dunham v. Gould 16 Johns. 374; and chief justice Savage, in Bank of Utica v. Wager 2 Cowen 767, give such history. The statute of 37 Hen. VIII, provides that no person should loan, etc., by way of corrupt bargain, on pain of forfeiture, etc. The statute of Elizabeth only changed the rate,of interest, as did also those of James and Charles, The statute of 12 Anne [* 29] provided that no person should take, etc., and that all contracts by which is reserved or taken more than is allowed, should be void ; and that every person should forfeit, etc., who should, by means of any corrupt bargain, etc. The statutes of Connecticut and Virginia are like it. No doubt the rule laid down by the courts, that there must be a corrupt bargain, is based upon the wording of these statutes. The statutes of New York, Massachusetts, and this state contain no such words, nor do they make the contract void. It is true, a forfeiture is imposed; and no doubt these severe penalties have had their due weight with the; courts, in establishing the rules in favor of discounts, under bank practices, and the convenience of commerce and trade, in deducting the interest in advance. Yet there are numerous authorities cited in 2 Cowen 746 to 752, and 16 Johns. 373, and 19 Johns. 335, establishing beyond all doubt, that no practices, customs, or usage can control the express provisions of the statute ; and so far have courts gone in their zeal to maintain the supremacy of the law, as to declare a contract tainted with usury void, although not declared by statute. 2 Peters 533. With due deference, I submit, if some of the American courts have not gone too far in adopting the English decisions under statutes essentially different. Our statute provides that no more than the lawful interest shall be reserved or taken, on even a discount. And when the payment in advanced would indirectly effect that, it is an evasion of the law, although thei*e may have been no intention to do so. But, if a corrupt intent is necessary, the law will presume it to be present, wherever its provisions are violated, as was held in the cases in 2 Cowen 703, 763 ; where the rule of computation, as to the time, was evidently contrary to law. I have reviewed these decisions to show that the first impression of the courts was, that it was usurious to take interest in advance, as evidenced by the first dicta and decisions ; and, also, that the courts very early decided that it was not usury, under the statute of Henry VIII, and have followed up that decision uniformly clown to this period, under all the English and American statutes. Such a long course of uniform decisions, for upwards of two hundred years, ought to settle the question; more particularly so with us, as those decisions were made upon statutes precisely like our own, as to the mode of reserving interest, and which were known before its passage. ■ But I have also alluded to them to show, that a principle erroneously established, will not, and cannot control judicial discussions, while courts may yield to its authority. If the question was now new, and the business of the country not so deeply involved in transactions of the kind before named, [*' 30] I believe it would be differently ruled. The decree is affirmed with costs. Decree affirmed. Wilsom, Chief Justice, and Catón, Justice, did not hear the argument in this cause, and Treat, Justice, having been of counsel, gave no opinion.