ROANE, Jüdge.
At the first hearing of this cause, I was strongly inclined to think that the bond in question was usurious, even upon an ex parte argument, but now, upon a full discussion, and mature consideration, I am con-
firmed in that opinion. But, before I come particularly to the circumstances of the present case, as arising from the special verdict, I will lay down some principles, which appear to be clearly warranted by law.
1st. If the corrupt agreement be not expressed in th© verdict, but it is apparent to the Court that the matter is usury, there it is not necessary for the jury to shew that it was. corruptly made. Roberts v. Tremayne; Cro. Jac. 508; for, in the language of the case, res ipsa loquitur,
2d. That, where the intention of the contract is to get more than legal interest upon the- sum lent, it is usury ; unless the sum itself be put in risque. [Jestons v. Brooke,] Cowp. 797.
*64 3d. But, that a slight contingency will not take a cofrtract out °f the statute, where the substance of the contract is a borrowing and a lending. [Richards v. Brown,] Cowp. 776.
4th I hold it also to be a clear principle, that a corrupt forbearance of money then due, is as much within the statute as an original loan; and that, within the meaning of the statute, it is a loan. *
To test the present case, by the foregoing principles :
On the 17th day of December, 1787, the defendant being indebted to the plaintiff by bond, on demand, in 443/. 11,?. 3 d. sterling, with interest from the first of January, 1786 ; by agreement, assigned to the plaintiff certain bonds, amounting to 780/. currency, at the value of 382/. 8s. 2d. sterling, and his own bond for 1491. 125 Id. currency, on account of the said debt. Which bonds, the jury find, exceeded the original debt and interest, by the sum of 244/. 12s. 7d. currency; on the giving and assigning these bonds respectively, the plaintiff lent, or which is the same thing, forbore to demand the money originally due him; as to the sum for which the bond in December was given, until the first of March, 1789, and as to much the greater part of the money due by the bonds assigned, until periods of time posterior to that of the transaction. The bonds so assigned, and the bond in December, are all of them bonds with sureties; whereas the bond, in lieu of which they were given, was a single bond; and as the jury find that the obligors in the bonds assigned were, at the time of the assignment, deemed of sufficient estate and property to discharge the same, I may safely affirm that the risque of losing the present money, as respects the ability of the obligors, was not increased, but rathér lessened by the transaction now in question. It is also found; that the defendant, about the time of this transaction, intended to remove to Kentucky. Whence we may reasonably infer, that he was under a peculiar situation, which placed him much within the power of his creditor.
Under the above principles, is this transaction usurious or not ?
The money due, as' above stated, was, by this transaction, forborne to be demanded; and, in consideration there-one obligation was- given, and others assigned, the amount of which exceeded greatly the' principal and inte* *65 rest really due. It is true,-the jury have not found the forbearance, in so many words ; but, they have found the agreement and the bond, in which the forbearance is contained, and that is the same thing. The money due by these obligors could, every shilling of it, have been recovered, supposing the question of usury out of the case, unless there had been an insolvency of tire obligors; and, in the case at bar, that is far less probable, than in the original bond. For, there are sureties to the bond on which the suit is brought, whereas that was a single bond, and the obligors, in the bonds assigned, are found to have been of sufficient ability. What then, upon the face of this transaction, could have induced the defendant to have acceded to the terms of this unrighteous accommodation, but the distress and duress under which he laboured ?
If it be said, that on the contingency of all the obligors in the original bond .being insolvent, then Frist oe could only be made responsible for the sum allowed as the value of the assigned bonds, upon the principle on which this Court went in the case of Mackie’s exr. v. Davis, et al. 2 Wash. 219, which sum, with the bond in discussion, is not more than was originally due: I answer, that the event
of their being insolvent, under all the circumstances, of this case, are too slight and remote a contingency to take the case out of the statute, according to the spirit of the decisions, upon the subject.
But we are to consider the ease, upon the bond only, for, if the agreement of the creditor is to get an illegal profit on money lent, every bond given in pursuance thereof, is void.
In deciding this case, I go entirely upon the circumstances of the transaction in question, forming the terms, on which money was to be lent or forborne; and, therefore, it is entirely different, from a case of the sale of a bond, unconnected with a loan. For, in my mind, every cireumstance here, has considerable weight; especially the ability of the obligors, the additional sureties; and the defendants being about to remove to Kentucky. The decision of this case, therefore, will not affect other cases, where such circumstances are wanting.
I said, that the jury have found what is tantamount to finding a forbearance expressly; that is to say, they have found an agreement which shews a forbearance; and bonds given in pursuance thereof, payable in future, for a debt due by a bond on demand: And this being the case, I *66 may say, in the emphatieal terms of Lord Mansfield, [in Lowe v. Waller, 2 Doug. 740,] that it is impossible to wink so hard, as not to see, that a borrowing and loan money was intended.
But these bonds, it is said, were sold for their real value: I answer, that in ease of the solvency of the obligors, (of which there was no reason to doubt from the verdict,) the plaintiff, inasmuch as bonds form a certain measure of value, was sure of getting a sum exceeding that due, with interest by the sum of 244/. 12s. Id. currency, and the present sum not put in risque.
But, indeed, putting bonds merely on the footing of chattels; I suppose that if, on an usurious .agreement for money, ahorse were set off at 25/., whereby to enhance the balance of the money borrowed, beyond what in justice it ought to be; and a bond given for the balance in pursuance of such agreement expressed, or which is the same thing, manifestly inferred from the circumstances of the transaction itself, that such bond would not be permitted to stand; but would be deemed usurious and void. For, where the intention is to- get an illegal profit upon money lent or forborne, the wit of man, as said by Lord Mansfield, [in Floyer v. Edwards, 1 Cowp. 114,] cannot devise a shift to evade the statute.
On every principle, therefore, this transaction is usurious, and the judgment of the District Court is right.
CARRINGTON, Judge.
The case carries several marks of hardship along with it, all tending to shew, that the defendant was driven into an agreement to give more than the law has established, for a little longer indulgence from his creditor. For, none but a man pressed by the urgency of his affairs, would have consented to such an improvident bargain, and unusual sacrifice, as was made in the present case. Into whatever shape thrown, it was, strictly speaking, an engagement on the part of the plaintiff to receive, and of the defendant to allow greater gain, than that prescribed by the statute. In other words, it was a contract of forbearance, in consideration of more than the legal profit; both principal and profit being so well secured, that there was not the slightest danger of either being lost. There cannot be a doubt but this was usury; and, therefore, I am for affirming the judgment.
LYONS, Judge.
The bond is good in form, but it is objected to,'as being given for an usurious consideration; be *67 .cause, the assigned bonds and this together were for more than the original debt. In all findings by juries, nothing is to be presumed; for facts and not evidence of facts, must be found, which was well illustrated at the bar, by the case an action of trover and conversion; in which, if the verdict omits to find the conversion, it will not be presumed. * In the present case, the verdict does not find that the assigned bonds were transferred at more than the current value, and . if any presumption were to be admitted at all, it should rather be in favor of the plaintiff; who ought to be supposed to have acted rightly, until the contrary is shewn ; especially as the defendant acknowledged afterwards, that the debt was just, and it is a rule that fraud or corruption ought not to be presumed, neither does the verdict state any offer of further time for the balance on payment of the bonds ; and therefore, all argument upon that ground fails. So, that upon the verdict, it is really no more, than the ordinary case of a sale of bonds, which is not unlawful, according to the decision of this Court in the case of Hunter’s exrs. v. Hylton, where the bonds were as well secured, as those in the present instance. If, then, it would not have been wrong in other persons, to have purchased them on those terms, why should it be in the plaintiff, when there was no communication for a loan or forbearance ? I confess I can see no reason for it; and therefore, cannot say that the agreement was illegal.
The intended removal to Kentucky, even if it had been imparted by- the defendant to the plaintiff, would not have altered the case; but if it would, still the jury have not found that the defendant told the plaintiff of his intention to go thither, or that there was any conversation between them concerning it; and therefore, no inference can be drawn from thence. The verdict does not state, that the defendant considered himself in the plaintiff’s power, or that he was driven into any usurious engagement, by the terrors of his situation. Ought I then, as Judge sitting here to decide upon the facts presented to me in the verdict, to presume, what the jury with all the evidence before them have not thought proper to infer ? Especially, when the transaction bears another construction, namely, that the defendant being about to leave the State, meant to do justice before he went.
*68 The plaintiffs conduct appears to have been fair throughouh n°t only during the transaction itself, but even after the suit was brought; for, the plea of payment was withdrawn by consent, which was fair and candid, and if presumptions were to be indulged, it would afford no slight evidence of his confidencé in the purity of the original negociation. But, I repeat it again, that presumptions ought not to be admitted at all.
The jury might have found, if the evidence would have supported them in it, that the defendant was forced into the settlement, that there was an intention on the part of the plaintiff to make illegal gain, and that the bond was given in consideration of forbearance ; but they having omitted to find these facts, I with less information of the transaction than they possessed, am not at liberty to infer them. The defendant surely, cannot expect me to be satisfied with less evidence, than would convince the jury.
It was said though, that the jury was not bound to find in words, that the agreement was corrupt or usurious. Be it so; but then they must find something equivalent to it. In the present case, they have not found any circumstance constituting a corrupt or illegal bargain; and yet I am called on to pronounce the transaction usurious, when not a single ingredient constituting usury, is contained in the verdict. For, the jury have not found, either that the defendant asked, or that the plaintiff offered a forbearance; they have not stated any corrupt motive, or design to make illegal profit from the distressed situation of the defendant; they have not said that the bonds were settled at less than the market value, or that the defendant was driven into the agreement by the exigency of his affairs, or the extortion of the plaintiff. But, without something of this kind, surely there can be no usury. Although goods sold for more than the Value, or property settled at less, may be usury according to the circumstances, yet those circumstances must be found. In the case of the goods, a prior communication for a loan, or something amounting to it must be stated; and in the ease of the property, the actual value should be found, with the forbearance and other circumstances tending to shew, that it was settled at less, with an usurious intention. Bonds actually due do not sell for the nominal amount; and much less those upon time. They fluctuate in value like corn, wheat, or any other article. So, that the purchase of them, for less than they express upon the face, may be perfectly innocent. I cannot, therefore, in the *69 present case decide, that a transaction, unaccompanied with any unfair practice, is void; merely because the fendant has voluntarily made an improvident bargain, which has eventually proved beneficial to the plaintiff, whose conduct has not been impeached.
That the bonds were warranted to be due, don’t alter the case; for, all sales are warranted; and perhaps the plaintiff could not have recovered of the defendant more than the value paid, in case there had been an insolvency.
Upon the whole, the least that could have been required, would be, that the verdict should have stated that the assigned bonds were rated below the market value; and that in consideration thereof, the bond on which the suit is brought, was given for forbearance of the balance; the most, therefore, that could be done for the defendant, would be to award a new trial in order to have the defects supplied. But I am for reversing the judgment.
PENDLETON, President. I do not consider the verdict in the present case as uncertain, or objectionable as finding evidence instead of facts. The jury refer to the evidence indeed, but that is surplusage, since they find the facts, which are proved by that evidence. Usury is a question of law, and. the jury find in a clear and sensible manner, all the facts necessary to decide it.
Mr. Randolph’s first point maybe thrown out of the question, since if there was no usury, the bargain was to stand; and the bonds assigned at the value agreed on of 382f. 8s.
2d. sterling, leaves no excess to be set-off against the bond on which the suit] was brought. The supposed threat of the plaintiff not appearing to have been used at the agreement, if it was of any consequence, may also be laid aside, or balanced by the other, finding that the defendant acknowledged the debt to be just, when the writ Was served; which is equally unimportant, since he could no more sanctify the corrupt agreement, if it was one, by that acknowledgment, than he could by his original assent in making it.
I proceed,- therefore, to the principal point.
The legal principles on which questions of usury are to be decided, appear to me to be well settled.
An agreement by which a man secures to himself, directly or indirectly, a higher premium than legal interest for the loan of money, or the» forbearance of a debt due (for, in reason and precedent, they stand on the same' *70 ground,) is usury. * But if the principal, or any consideraWe Part, be put in risque, it is not usury; because, the excess in the premium, is a consideration for that risque. So, if it be amere sale of property (andbonds+ are as much property in this respect as any thing else,) although at an under value, it is not usury; because, price is a thing unfixed, and depends upon the convenience of the parties contracting.
But, if the bargain proceeds from, and is connected with a treaty for the loan or forbearance of money, it is usury; because, the vendor is supposed to have submitted to a disadvantageous price, under the influence of that necessity, which the statute meant to protect him against.
How do these principles apply to the present case on the special verdict ?
The jury find that, on the bonds assigned, and the bond in suit, the plaintiff received 244/. 8s. Id. more than the principal and interest, due on the bond, they were meant to discharge; and that no part of the principal was put in risque under the agreement, since they find that the obligors were deemed solvent at the time, and proved so' in event. The plaintiff’s security was bettered too by the liability of the debtors in the bonds assigned, and the sureties to his new bond, instead of the defendant, being alone answerable on the old bond; and he still remained liable for the whole: So that there was no risque.
Then, was this a mere independent sale of the bonds, or connected with a proceeding, from a treaty for payment of part of a debt due, and forbearance of the residue ? It is apparently the latter; and, therefore, it differs from the case of Hylton v. Hunter’s ex’rs. which was a mere bargain for sale of bonds; and there was no prior treaty for borrowing or forbearance.
For, what brought the parties together in the present case? It was not to treat of the sale and purchase of bonds, but of the debt existing between them. The bonds are offered as payment, and the plaintiff in his acceptance of them, imposes on the defendant terms, which secure to himself a profit beyond legal interest: and on these terms, as they make but a partial payment, he will give a further day for the balance; provided, the defendant will, to his *71 own obligation, add other security for it. These terms are accepted, and the bond in suit given in consequence.
Under this view of the case, nothing can be more apparent to me, than that this agreement was entered into by the defendant, in order to procure forbearance of part of a debt due, and to avoid a suit for- the whole, and that it was not an independent sale. Which, if it had been, I should have adjudged it the proper business of a Court of Equity to enquire into its fairness or iniquity, and that it was not usury.
I concur in affirming the judgment; and am authorised by the absent Judge to say, that he also concurred.*

[* Musgrove v. Gibbs, 1 Dallas, 216.]

[* Per C. J. in The Chancellor of Oxford’s Case, 10 Co. 56.]

[* Usury, what ? Robertson v. Campbell, 2 Call, 430; Price et al. v. Campbell, lb. 110.]

[† Hansbrough v. Baylor, 2 Munf, 36.]

[* See Watkins v. Taylor, et al., 2 Munf. 424, 3 Munf. 592 ; Taylor, admr. of Holloway v. Bruce, Gilmer, 42.]