ROANF, Judge.
By the transaction which preceded and accompanied the drawing the bills of exchange by Scott on the-27th October, 1773, Field & Call assigned to doctor Field the debt due to them by Scott. As to the amount of the smaller bill, however, it does not appear that any consideration was paid therefor by doctor Field. It must be considered therefore as taken for the benefit of Field & Call, and given merely to settle the whole sum due, and to round the transaction. As to the ;£1000 for which the larger bill was drawn, another bill was given by doctor Field therefor, payable in Scotland: That bill was assigned by Field & Call to Bland’s trustees, I presume for a full consideration, and thus so far Field & Call got paid the debt due to them by Scott: But the matter rested not there: *That bill was protested, and Field & Call are liable as endorsers. They have recourse however against doctor Field; and in that view (upon this transaction taken singly) may, in the event of doctor Field’s solvency, be considered as indemnified, and substantially holding the payment 'they have received, on the assignment of the bill.
But this transaction must not be taken singly; it must be taken in connexion with another, viz. The drawing and endorsing Scott’s bills. If Field & Call shall be obliged to pay them (or at least the large one) and be unable to get reimbursement from Scott’s representatives, it is evident they would, in that event, be wholly unpaid, and lose the advantage they had gained by their transfer of doctor Field’s bill to Bland’s trustees. They are apprehensive of danger from this source, and bring their bill on the principle of quia timet, founded on the circumstances of the original transaction, and on the mortgage executed by Scott. They bring their bill as sureties apprehending danger from the insolvency of the principal; and on the just ground for the interposition of equity, that a man has a right to put an end to an impending danger or incumbrance.
Field & Call then, standing merely in the character of sureties (at least as to the large bill) any vice in the original transaction, or any discharge of the principal or interest of the debt would equally enure to their benefit: Any defence to be made by the drawer might equally be made by them.
The complainants thus standing on a common ground with the defendants in relation to the validity, or discharge of the bill, and being wholly incompetent to represent the holder in respect thereof; however it might be prior to the coming in of the objections to the bill on the part of the defendants, should, when those objections did appear, by making the representatives of doctor Field parties, have put the matter *770 in train for a fair and final adjustment between all parties. Equity delights in doing ultimate and complete justice at once, and preventing a circuity and multiplicity of actions. But whatever might be the decree in *this suit and between the now parties, it is clear that it would not affect James Eield. He might, in a subsequent action against Scott’s representatives, be defeated on the ground of an original vice in, or a subsequent discharge of, the bill in question, while in the mean time the complainants might have sold Scott’s property, to quiet an apprehension thus turning out to be groundless.
On these grounds, I think the case was not ripe for a decision. The complainants ought to have made doctor Field’s representatives parties, so that their real liability being ascertained, and the court having all the parties to the transaction before them, might be enabled to render complete and final justice.
X think therefore that the chancellor erred in deciding the case in that stage of it. He ought to have given the complainants leave to make the additional parties, on failure of which, within a reasonable time, his bill ought to be dismissed.
This view'renders it premature, and perhaps improper to say any thing on the merits of ' the cause. But as the question of usury has been much laboured, and it may tend to prevent future litigation on this score, 1 am free to say, that under my present impressions, and upon the now testimony, I do not think that usury can be fairly inferred.
FLEMING, Judge.
Although usury has not been proved, and it is perfectly, clear that Field & Call were bound by their endorsement, I am of opinion, that the plaintiff is not entitled to an immediate decree against the present defendants, as he has not made necessary parties to the bill. For a court of equity delights in doing complete justice; and therefore requires, that all persons having an interest in the controversy should be made parties to the suit, in. order that the proper decree may be made between them, and an end put to litigation. Consequently, I am for reversing the decree, and sending the cause back again to the court of chancery, that the proper parties may. be made.
*CARRINGTON, Judge.
Thomas Scott, on the 27th of October, 1773, being indebted to Field & Call in £1187. 15. sterling, and being desirous of borrowing money to satisfy the demand, applied to James Field, (who supposed he had money in Scotland,) requesting a loan, to the amount of his debt to Field & Call. To which James Field assented; provided Scott would give him a bill of exchange for the sum to be lent, upon some house in Great Britain, and procure an endorser as security, in case the bill should be protested. Scott being satisfied with the terms, applied to Field & Call, (who wanted money in England,) to become endorsers: which they agreed to do, if James Field would give them a bill upon Great Britain, for £1000 sterling, and be answerable to them for the balance of Scott’s debt. This being consented to on all sides, Scott drew, in favour of James Field, two bills, endorsed by Field & Call, that is to say, one for £1000 sterling, and the other, for £187. 15. sterling, upon Cumming & Son of Edinburgh: and James Field drew a bill on Home of Edinburgh, in favour of Field & Call, who endorsed it to Bland of London. All the bills came back protested : and Field & Call finding themselves liable to Bland, as endorsers of James Field’s bill; and to James Field, as endorsers of the bills drawn by Scott, whose original debt, consequent^, remained unsatisfied, obtained from Scott the deed of mortgage in the bill mentioned, in order to secure them against future events. Field & Call took up the bill for .£187. IS. sterling, and Call, as surviving partner of the firm, brought this suit to foreclose the mortgage, praying that Scott might be decreed to pay to James Field, the amount of the bill for £1000 sterling. The court of chancery, being of opinion that the bills drawn by Scott were founded in usury, dismissed the suit, upon a hearing, with costs: and the plaintiff has appealed to this court.
The first question is as to the usury. I discover nothing of that character in the transaction: which were fair and open, and agreeable to the constant usage with respect to *bills of exchange. Any man is at liberty to draw a bill; but he does it at his own peril; for he knows whether it will be paid, or not, and the payee has nothing to do with that en-quiry. Therefore, if a corrupt agreement be not proved, nothing will be imputed to the payee, Price, &c. v. Campbell, 2 Call, 110; and there is no such proof in the present case; which, in effect, is no more than this; Scott wanted money to pay Field & Call; and James Field agreed 'to lend it by a bill on Scotland, provided Scott would replace it there, by another bill. Ail this was perfectly fair; and if Scott had either had money in Scotland to meet his bills, or had taken care to provide it, they would have been paid, and he discharged of his original debt, without any additional bur-then. But how can that transaction be called usurious, which permits the debtor to relieve himself from the excess by payment of the principal and legal interest? On the contrary, the law is settled, that, whenever he has such power of relief, there is no usury. Burton’s case, 5 Co. 69; Cro. Jac. 509, per Doderige, J. It was said that the case was like that of Gibson v. Fristoe, 1 Call, 62: but it has no resemblance to it; for that was the case of a fixed premium for forbearance; but here it was contingent, whether Scott would have to pay the 10 per cent, or not, as it was in his power to exempt himself from it, by procuring his bills to be honoured. I am therefore clearly of opinion that the transactions in the present case, were not usurious ; that Field & Call are liable as endorsers of Scott’s bills; and that Scott is bound to indemnify them.
The next enquiry is as to the relief.
It is clear that the primary object of all the transactions was payment to Field & Call of a just debt due to them from Scott; and that the same has . never been paid, either by him, or by any other person. *771 Scott, indeed, during the month of December 1781, caused ¿4000 paper money to be tendered to James Field, who refused to receive it: in consequence of which, the money was carried back to Scott, without being deposited any where for safe keeping, so that*it could not be used, but might always be forthcoming. The tender, then, had no effect even at law, Downman v. Downman’s executor, 1 Wash. 28; and much less in equity. I think, therefore, that the representatives of Scott should be decreed to pay Field & Call, the amount of Scott’s two bills within a reasonable period; and, if they fail to do so, that the mortgaged subject should be sold to satisfy them, upon the appellant’s entering into bond with security in the court of chancery, to indemnify Scott’s representatives against the bill of ;£1000 sterling, drawn by Scott in favour of James Field, and endorsed by Field & Call; who will have James Field’s bill, which they endorsed to Bland, as an offset against it; and- thus substantial justice will be done all round.
This view of the subject renders it unnecessary to bring the representatives of James Field into the present case, as complete justice can be attained without it, and delay, with an increase of interest and costs, prevented. But a majority of the court think, that those persons ought to have been made parties, and that the following decree should be made :
‘ ‘The court is of opinion that the said decree is erroneous in this, that the said high court of chancery, instead of pronouncing that decree, ought to have given leave to the appellant to amend his bill, by making the representatives of James Field parties; which, if not done within a reasonable time, the bill ought to stand dismissed ; therefore, it is decreed and ordered, that the decree aforesaid be reversed and annulled, and that the appellees paj' to the appellant his costs by him expended in the prosecution of his appeal aforesaid here.”