Tucker, P.
The- bill in this case is filed for the purpose of carrying into effect a deed of trust for the security of a debt from W. C. Nicholas to the appel *349 lant. The defence set up is, that the transaction was in violation of the statute against usury, and that the security is therefore void ; and if this defence is sustained, the appellant was properly dismissed from the forum of the chancery court.
Before we go into an examination of the facts in this case, it may not be amiss to settle the question which has been so zealously argued as to the authority of the case of Roberts v. Tremayne, Cro. Jac. 507. The vigorous assault which has been made upon it, sufficiently evinces the conviction even of the counsel for the appellant, that its principles, if established, bear hard against his client; and a full examination of the case has satisfied me that his sagacity has not on this occasion deserted him.
The case of Roberts v. Tremayne, was decided in the reign of James 1. more than 200 years ago, by justice Roderidge and his associates, and the principles now in controversy were laid down by that distinguished judge. He says, “ If I lend £ 1.00. to have £ 120. at the year’s end upon a casualty, if the casualty goes to the interest only, and not to the principal, it is usury, for he is sure to have the principal again, come what will come: but if the interest and principal were both in hazard, it is not then usury.” These positions are in conformity with the cotemporary adjudications, and are recognized and relied on, as unquestioned law, in subsequent cases, and by every elementary writer. In Sharpley v. Hurrel, Cro. Jac. 208. the case was adjudged not usury, upon the ground that the principal as well as the interest was in hazard. In Soome v. Gleen, 1 Sid. 27. 1 Levinz. 54. lord chief justice Bridgman took the same distinction, between a bargain in which principal and interest are both put at hazard, which is the ordinary case of a bottomry bond, and the case where the principal is not in danger, but is to be returned at all events. It is on this distinction, indeed, that the whole system of bot *350 tomry and respondentia bonds rests. It is not merely for the convenience of trade that they have been sustained, but because of the risque which the lender runs of losing both principal and interest: for if the risque goes only to the interest or premium, and not to the principal also, though a real and substantial risque be inserted, it is a contract of usury, and void. Park on Insurance 416. 2 Ves. 148. Again, in Mastin v. Abdee, 1 Shower 8. it is decided that if the principal and interest be in hazard, it is no usury; and from the same case in Carthew 67. (under the name of Mason v. Abdy) the defence appears to have rested upon the ground that the principal was in danger, but the hazard being deemed colourable, it was declared usurious. The case is also reported in 3 Salk. 390. and the distinction of justice Doderidge is plainly stated there. Coming down to a later period, .we find the opinions of justice Doderidge on this particular point, recognized • in Chesterfield v. Janssen, 1 Atk. 301. 2 Ves. 125. by justice Burnet and lord Ha.rdwiclce, and the same doctrine, laid down in Mason v. Abdy, is set forth as the established law. So too in Murray v. Harding, 2 Black. Rep. 859. and 3 Wilson 395. the opinion of justice Doderidge is quoted at large as the law of the subject by De Grey, chief justice; and Blaclcslone, justice, in like manner proceeds upon the ground that the principal must be put in hazard. And in our own courts, in the case of Gibson v. Fristoe & others, 1 Call 62, 73. judge Roane, in -laying down certain principles which he holds to be clearly warranted by law, announces this doctrine among others, “that where the intention is to get more than legal interest, it is usury, unless the sum itself be put in risque.” And judge Pendleton says that taking more than legal interest is usury; “but if the principal or any considerable part be put in risque, it is not usury, because the excess in the premium is a consideration for that risque.” In 4 Peters 226. the same doctrines are maintained. *351 We find them also recognized by the elementary writors generally. See 1 Fonb. 198. Ord 72. Comyn 33, 34. 1 Esp. N. P. 177. 2 Blac. Com. 461.
After such an uninterrupted acquiescence in the principles laid down in Roberts v. Tremayne, it would at this day be without excuse, to overrule them, and to set up a new interpretation of the statute. But in truth, if the question were open, I should not hesitate to adopt the construction, that where the interest only is at hazard, the statute is infringed by a contingent contract for more than legal interest. It was certainly going far enough, in the construction of statutes which declared that “ none should take for a loan above 8 per cent.” to say that where a greater interest was reserved, the excess should be taken to be a compensation for the risque, and not for the loan, provided the principal were put in hazard. To have gone farther, would indeed have made the statute vain. If, upon a contingency which goes only to the interest, I do take more than legal interest, my case is within the very letter of the statute, which contains no exception in favour of usury contingently reserved. By what warrant then can the court make the exception ? There is not so plausible a reason for taking such a case out of the operation of the act, as there is in cases where the principal is put at risque. Many of these contracts of hazard are recognized by the law as salutary and convenient, such as insurances upon lives, marine insurances, bottomry and respondentia bonds, and such like : cases in which it is obvious that the borrowing and lending of money is not the real object of the parties, and which therefore do not come within the statute. For, if I advance <£ 100. to a ship owner to enable him to carry on a voyage, upon terms to receive £ 150. if the ship returns in six months, but if she is lost, to receive nothing; here it is obvious that the contract operates as an insurance of the £ 100. advanced, and not as a mere loan. But if I advance *352 £ 100. on terms to receive £ 150. if she returns safely, ** and to receive £ 100. even if she be lost; here there is nothing insured to the ship owner. The transaction is an advance of money to be returned at all events, and so is strictly a loan. And it is a loan by which, if the ship returns in safety, I am to gain the usurious interest of £ 50. for 6 months loan of £ 100. It is therefore strictly within the statute. Upon the whole, then, I take the principle stated by justice Roderidge in Roberts v. Tremayne, to be incontrovertible.
Another question has been presented, of which it may be as well to dispose before we proceed to examine the facts in this case. It refers to the pleadings in cases of usury, and has grown out of some remarks of my own in the case of Crenshaw’s adm'r v. Clark et al. 5 Leigh 69. I observed that “ where the defence goes not merely to absolve the debtor from usurious gain, but to vacate the contract and to annihilate the debt, — to take from the usurer his just principal, and put it in the coffers of the debtor to whom it does not fairly belong, — it is right, upon every principle of good sense and of law, that the fact should be clearly proved. At law, this is certainly the case. If usury be pleaded to a bond, and'established, the bond is vacated, and the usurer loses his debt. Therefore the usury is required to be set forth precisely in the plea, and it must be proved as set forth. The effect of this is, that if the party fails in his proof, or cannot establish the usury without resort to a court of chancery, he will be compelled, in receiving the aid of that tribunal, to pay up the principal which is justly due; and this is precisely the result that justice requires; for while we look with aversion upon the usurer who demands 20 per cent, of a needy borrower, the moral sense revolts not less at the needy borrower who will pocket 80 per cent, of the usurer’s money.” These principles, I find, have led the court of exchequer in England, to reject the practice *353 of setting aside judgments on the ground of usury, which prevails in the king’s bench. “ The regular process of a court of equity,” says chief baron Eyre, “is in every respect best adapted to the case. The plaintiff is entitled in consience to the money he has advanced : if we set aside the judgment, he loses that, with the rest: a court of equity, on the other hand, decrees what is really due, and no more.” Mathews v. Lewis, 1 Anstr. 7.
Again, in Crenshaw's adm'r v. Clark et al. it is said, “Although I can cite no case to shew that a plea of usury by a defendant in equity must be as distinctly set forth, and as clearly maintained, as in an action at law, I incline to think that such is the rule : nor is it injurious to the defendant; for if he fails in establishing the usury, he may still, by an appeal to the conscience of the usurer, by a cross bill, relieve himself from the usurious premium. If this be so, there can be no doubt that there is no such reasonable proof in this case, as to sustain the allegation of usury, and to destroy the plaintiff’s demand even for his principal.” This was one of the questions in the cause, the chancellor having expressly declared that the fact of usury was sufficiently pi'oved. The opinion was not therefore extrajudicial. I admit, however, it is not authority, in its full extent; for though our lamented brother Carr expressed an entire concurrence in the opinion, his prepared opinion is not so explicit. He says, however, “ This being a pretty severe penalty, it is not inflicted without strong and clear proof.” So in Grigsby v. Weaver, 5 Leigh 209. judge Brooke says, “Usury is an offence against the statute, which ought to be well proved before a party is convicted of it: I do not mean by direct proof only, but by inevitable inference, drawn from established facts.” And this, after all, is the. material point; for if the fact must be clearly and strongly proved, it follows of course that it must be distinctly set forth. There *354 are no principles more firmly established than those which require the allegata and prolata to correspond, and the distinct announcement of the grounds of demand or defence, by the respective parties in a cause. They are principles as applicable to courts of equity as to courts of law; and it would be truly mischievous were it otherwise. To permit a defendant, in answer to a bill of foreclosure, to set forth generally that the claim was usurious, without disclosing the facts on which the allegation rests, would be unfair, and calculated to take the plaintiff by surprise. The allegations, whether of bill or answer, ought to be so distinct and precise, as to give the adverse party notice of what he is to contest: and when so stated, they must be proved satisfactorily to the court, to entitle the party to its decree. It would lead me too far, were I to extract the various cases which go to these points. I must content myself therefore with a general reference to them. They will be found to establish the positions, that the demand or defence must be distinctly set forth; that evidence applying to a matter not in issue will not be regarded ; and, by consequence, that a party is not to be permitted to allege one thing and prove another. See 6 Johns. Rep. 564. 1 Cowen 734. 4 Johns. Ch. Rep. 281. 1 Brown’s C. C. 94. 11 Ves. 240. 6 Munf. 42, 416. 5 Munf. 314. 3 Rand. 263, 504. 5 Rand. 543. 5 Johns. Ch. Rep. 82. 1 Rand. 249. I do not mean to say that the same technicality will be required in a defence by way of answer in equity, though much strictness, it would seem, prevails where the defence is by way of flea. Wortley v. Pit, 1 Ves. 164. Beames’s Pleas in Eq. 188. But I think it a fair application of the cases to the matter of usury, that the defendant who relies upon it, who is conusant of the transaction, and who, if he can prove it, can surely set it forth, should be held to a specification of the terms of the usurious contract, either by way of plea or answer.
*355 It is said, however, that in ejectment at law, or in assumpsit or detinue, usury may be given in evidence without being pleaded. The reasons, however, are obvious. The manner in which the plaintiff’s demand in those cases is stated, is so general, that the defendant has no notice to bring forward that defence. In ejectment, the usurious deed is for the first time produced upon the trial. Until the moment it is produced, the defendant has no right to take for granted that the plaintiff rests his claim upon any such deed. He is not therefore called upon to assail it until its production, and as it is introduced without pleading, it is of necessity to be contested without pleading. And so in assumpsit and detinue. But there is no case of which I atn aware, in which a defendant, who is sued upon a specialty at law, has been permitted to go into evidence of usury, without having specially pleaded the usury. Now the demand here, if to be governed by legal analogy, must fall within the principles applying to actions on specialties, since it rests itself expressly upon the deed of trust, as a security for money, the payment of which is required by the plaintiff.
Upon examining this case, however, I am of opinion that the answer is abundantly full, even upon the principles of Crenshaw’s adm’r v. Clark et al. And if it be true that this deed of trust has grown out of the usurious transactions, it is obvious that the amount now demanded is the usury, and that, the plaintiff is seeking no portion of bis principal or legal interest; so that be is not on that ground entitled to the rigorous exaction of special pleading from the defendant. I shall not waste time in examining the charge of usury as to the first contract. IL is clear and distinct, and the facts set forth with ample certainty. The defendant then proceeds to say, that by the alteration of the contract in July 1816, “ the usury became still more enormousthus distinctly charging the second contract to be usurious also, and *356 proceeding to set forth the facts upon which that charge rested.> The answer then proceeds: “ To complete the ruinous extortion of this contract, it was further modified in January 1818;” again distinctly charging that this contract added to the ruinous extortion of those that went before. It would be sticking to the letter, to say that by “ruinous extortion,” here, usury was not distinctly intended. In all these cases, indeed, we must be satisfied that the facts are proved, and that they amount to usu,ry; but we shall scarcely overrule the defence, if valid in law, and made out by proofs, merely because the defendant has not averred, in the forms of special pleading, that the agreement was usurious aud corrupt. For even the cases which insist that the charges should be distinctly made, and be sustained by proof, admit that there is less rigour, in point of form, in courts of equity than in courts of law. 3 Rand. 263. 6 Munf. 416.
Let us then examine the several contracts. In considering the first, I look upon the agreement and the indorsement as forming parts of one and the same transaction. They are of the same date, and upon the same paper, and independent of the testimony of Stribling, they would be looked upon as one. Whatever is indorsed upon a bond or contract, bearing equal date therewith, must be taken as part of it, until the contrary be proved. Gordon v. Frazier &c. 2 Wash. 130. This being so, the memorandum and agreement, if Stribling's testimony be rejected, must be taken to constitute together one contract betwen the parties. And if Stribling’s testimony is to be relied on, it can leave no doubt. Notwithstanding the mistake in his first deposition on this subject, he is admitted to be intelligent and of unimpeachable veracity; and after referring to his letter, he is satisfied, and so deposes, that the arrangement, as it was afterwards finally made, was entered into and perfectly understood before the appellant and himself saw *357 Nicholas. That arrangement was, that Nicholas should get the money, and pay bank dividends in lieu of into-rest, for 12 months; that he should give his obligation to deliver slock at the end of .12 months, unless stock rose or fell very much in the mean time, in which event the stock was to be paid at par, in money. When the contract was definitively made, this alternative was waived, and it was distinctly provided that the stock should be rated at par, and the amount be paid in money. But the clause about the dividends remained ; so that it was in fact an advance of 5000 dollars to have 5000 dollars returned (which is a distinct loan); and the lender was to receive dividends in lieu of interest, the dividends then being, and having for some years been, above 6 per cent. This is undisguised usury. Admit the hazard of reduced dividends not to have been colourable, — it was, according to Roberts v. Tre~ mayne, usurious, because the interest only was in hazard. But it was obviously colourable. What probability was there that dividends which had for years been above 6 per cent, were then 12 per cent, and for two years before had ranged from 10 to 12 — what probability was there that they would sink to less than 6 ? There was none. Il was but a contrivance to get 10 or 12 per cent, either to lull the appellant’s conscience, or to evade the law; and if so, it was usury. It is not proved indeed, in terms, that the chance of more than 6 per cent, was of the value of six per cent. — but this court sitting to determine law and fact, and to draw inferences as a jury may, must see that the chance of dividends which, since 1806, had only in one year been so low as six per cent, never less than that, and only on one other occasion less than eight per cent. — which wmre at ten per cent, the year before, and in that very year were at twelve, — was certainly worth more than six per cent. So that it was clearly a contract of loan for above the value of six per cent, and was within the *358 statute. This was the sole object of the transaction. Interest was the object, and the indorsements on the contract shew that the lender considered it as interest, though from exhibit B. it appears, that in pursuance of the contract, its amount was graduated by the' amount of the dividends. Moreover, as soon as the parties had provided that the sum loaned should be returned in money, and not in stock, the lender ceased to have any interest in stock, and the dividends could only have been referred to as a cover for usurious interest.
We come next to the contract of 1816. By exhibit C. it appears that Nicholas became bound,to Smith in July of that year, to deliver and transfer to him 150 shares of United States bank stock on the 1st of January 181S. Of the particulars of this contract we have little evidence, though that little suffices to shew its character. Upon the face of the exhibit, it appears to be merely a stock transaction, by which Nicholas, for some consideration not expressed, agrees to transfer a specific amount of stock at a future day. Now, as the price of stock is in continual fluctuation, the contingency existing in such sales has been justly held to exempt them from the imputation of usury, provided they are not used as a device to cover that offence. Ord 46. a. Maddock v. Rumball, 8 East 304. Pike v. Ledwell, 5 Esp. Rep. 164. Tate v. Wellings, 3 T. R. 531. Greenhow v. Harris, 6 Munf. 472. Steptoe’s adm’rs v. Harvey’s ex’ors,* in this court during the. last year. But if the transaction is only colourable, or is a mere cover for usury, the form of the contract will not protect it. This is admitted in all the cases before cited. Thus in Tate v. Wettings, where the defendant was to replace the stock sold for his use, at a future day,-but if it were not then replaced, he was to refund in money, and in the mean time to pay such interest as the stock would have produced, lord Kenyon left it to the jury to say whether it *359 was a bona fide loan of slock to be replaced, or was intended to be a loan of money, and the device a mere colour for reserving more than legal interest. Let us then look to the facts in this case, and see its real character. Was it intended as a bona fide stock purchase, or was it, notwithstanding its form, a device to cover the forbearance of the debt of 5000 dollars, and the loan of a further sum of 7000 dollars, for more than legal interest ? I think it was clearly the latter. The facts are, that Nicholas was needy and hard pressed: he was in the gripe of Smith his creditor: he was already fettered by a contract on which, for four years, he had been paying ten per cent, interest: the transactions between them had already been usurious, and thus gave strength to the suspicion that their future dealings would be of the same complexion : Nicholas had not a cent of stock, and was obviously attempting to relieve his present necessities by future sacrifices: the bank books were open, and stock was taken by others at par, which may therefore be fairly conceived to be its value; and Smith, instead of subscribing for it at that price, contracts with his needy debtor for the forbearance of an existing demand, and for the further advance of 7000 dollars, for the consideration of stock at 80 dollars (which was worth 100) to be replaced at a future day. Moreover, when the time comes for transferring the stock, we find that stock was not the object of the lender, unless he could make further profit by it; for he was to have the value in money, or the stock, at his option. These circumstances (though subsequent to the bargain) throw back a strong light upon its true character, and are proper evidence of what had been its real object. Ord 85. In such a transaction there are all the features which are deemed indicative of usury. Positive proof is rarely to be expected; and hence the courts have always rested upon circumstantial evidence. Thus, where the bargain originates in *360 a loan (1 Call 81.); where the seller is an habitual usurer (2 Rand. 112.); where the buyer of an article is in distress, and the price grossly inadequate (Gilm. 86.); where the party is needy and already in the power of the lender; where the hazard is slight, and the disproportion of price so great as to afford evidence of corrupt intention, — suspicion is very reasonably converted into conviction of the illegality of the transaction. See Ord 69. It would indeed be absurd, if the mere form of a stock transaction should be a sufficient veil for such a bargain as this. Is there no inadequacy of price which can satisfy the mind that a contract to deliver, at a future day, an article of fluctuating value, is usurious ? Suppose, when wheat is at a dollar, I contract with my needy debtor to give him further time if he will pay me interest in wheat at 50 cents, or will contract to deliver me, in 30 days, 1000 bushels at that inadequate price ? Suppose, for 5 dollars per share, advanced by me, A. agrees to convey to me, in 30 days, 100 shares of Virginia bank stock, now worth 110 dollars per share; can you “ wink so hard” as not to see the device ? So here, — when Smith gives 80 dollars per share for stock at that moment worth 100 dollars, and which judicious men were at that moment subscribing for, in the same city, at the par value, what could be his motive but usurious gain, and what the motive of Nicholas, but relief from present necessity, with the certainty of a ruinous sacrifice ? He had not a cent of stock, and did not borrow to subscribe; but the whole affair was, on his part, but a stroke of finance to raise the funds for present emergency, and on the part of Smith, to continue his unlawful gain. It is not improbable, indeed, that the 20 per cent, was taken off as the interest for the 18 months which were to elapse before the conveyance of the stock. But even this most favourable aspect of the case is usury under the statute, for the interest taken was more than 12 per *361 cent, per annum. It must be borne in mind, too, that Smith ran no hazard, being secured by the deed oí trust (exhibit E.) so that he was certain to get either the money or stock at the end of 18 months ; and the risque of its depreciation below 80 was, 1 think, only colourable. Upon the whole, therefore, I take this contract to have been usurious.
We come next to the contract of January 1818. At that date, stock was wortli 150 dollars per share; and by the'contract, Nicholas agreed to pay Smith, on the first of July, the market price of the stock on that day, or 350 dollars per share, at Smith’s option, with the dividends that might be declared thereon on that day. By this arrangement, Smith was secure in receiving the amount of the principal sum due, wiih the dividends, and took the chance of getting more. For if slock fell, ho would take the 150 dollars, and so get his principal; and if stock rose above 150 dollars, he would take the market price of stock, the excess of which above 150 dollars would be usurious gain. The case is thus precisely that of Barnard v. Young, 17 Ves. 44, 46. In that case, the lender had his option to have his principal and interest, or to have a given quantity of stock transferred to him. His principal never was at any hazard, as he was at all events sure of having that, with legal Interest, and he had the chance of more if stock rose. It was said to be usurious to stipulate for that chance. And so here; Smith was to have the market price of the stock on the 3 st July 1818, or 150 dollars a share, with dividends, at his option ; the sum of 150 dollars per share being really the amount of the principal due him by the contract.* Of course, if stock *362 fell, he nevertheless got the fall amount due him, with interest in the shape of dividends; and if stock rose, he would get as much more than the sum due him, as *“ the market price in July exceeded the market price in January. This chance w.as worth something, and whatever it was worth, was over and above his principal and interest, and so was usury. The case of White &c. v. Wright, 3 Barn. & Cres. 273. 10 Eng. Com. Law Rep. 75. is also in point. There, the lender of stock reserved to himself the dividends by way of interest (as was done here) and the option of deciding whether he would have the stock replaced, or the sum produced by the sale of it repaid to him in money, with 5 per cent, interest. The bargain was held to be usurious. “A party,” says justice Bay ley, “may lawfully lend stock, as stock, to be replaced, or he may lend the produce of it as money, or he may give the borrower the option to pay in one way or the other. But he cannot legally reserve to himself to determine, in future, which it shall be.” And Hol-royd, justice, said, “lithe produce of stock is lent with an agreement that it shall be returned in money, and the dividends are in the mean time reserved by way of interest, that is usurious, if the dividends amount to more than 5 per cent, on the produce of the stock. This case is still stronger, for the dividends did amount to more than 5 per cent, on the sum produced by the stock, and the lender had the further benefit of choosing, at a future time, whether the repayment should be made in stock or money.” JLittledale, justice, concurred. Nothing, I think, can be more apposite than these cases.
The three contracts of 1812, 1S16, and 1818, having all been usurious, and proved to have been connected, it only remains to connect them with the present demand, by referring to the testimony of Stribliug, who says that Smith told him it grew out of the former trans-o actions. If so, it is tainted with the usury that infected *363 them, and so the deed of trust is void. Indeed it is in this view obviously unimportant, whether all the eon-tracts were or were not usurious. For as each has grown out of that which preceded it, and as this of course must be connected with them all, it follows that if any one was usurious, this deed of trust must be invalid. And even if there was any one of the transactions not usurious, it could not avail the plaintiff here, both because he has not enabled the court to separate what is sound from what is vicious, and because he cannot, as jda.intif, enforce, in whole or in part, a mortgage or other lien that is tainted with usury. If Nicholas indeed were plaintiff, the deed would stand as security for what is justly due, and he would be compelled, as he asks equity, to do it. 3 Rand. 12, 220. 1 Johns. Ch. Rep. 482. 4 Johns. Rep. 536, 593. Rut the usurer is plaintiff, and can have no relief in that character. His bill therefore was properly dismissed.
Bkockenbrough and Parke it, J. concurred.
Decree affirmed.

 Reported 7 Leigh 501.

 Note by the president,. In considering this point, 1 take the exhibit D. as in evidence, though objected to; for the chancellor states the indorsement to be in Smith’s handwriting. Its importance would demand that the cause should be sent back to enquire into its authenticity, if it were denied, and if the case should turn upon this contract.